Alexander SHISTER, Plaintiff-Appellant,

v.

Bipin N. PATEL, Ranjan B. Patel,
Rajul Bhagwanjee, Coldwell Banker and
ABC Insurance Company,
Defendants-Respondents.

Court of Appeals

*No. 2008AP2803. Submitted on briefs August 17, 2009.
—Decided October 28, 2009.*

2009 WI App 163

(Also reported in 776 N.W.2d 632.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Eugene Bykhovsky* of *Machulak, Robertson & Sodos, S.C.*, Milwaukee.

On behalf of the defendants-respondents, Bipin N. Patel and Ranjan B. Patel, the cause was submitted on the brief of *William G. Ladewig* of *Ladewig, Rechlicz, & Iggens, LLP*, Menomonee Falls.

On behalf of the defendants-respondents, Coldwell Banker and Rajul Bhagwanjee, the cause was submitted on the brief of *Michael J. Ganzer* and *Lauria Lynch-German*, Milwaukee.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. NEUBAUER, P.J. This appeal stems from Alexander Shister's purchase of a home owned by Bipin and Ranjan Patel. Shister claims that he suffered damages when the Patels and their real estate broker, Rajul Bhagwanjee, failed to disclose that the Patels remodeled the basement without the proper permits and that there was a pending reassessment on the property which resulted in an increased property tax. Shister appeals the trial court's summary judgment order that the economic loss doctrine bars all tort claims against broker Bhagwanjee and her employer Coldwell Banker. The trial court further limited damages to the costs of retroactively obtaining the required permits, dismissing any damages associated with the property tax increase as too speculative. We granted Shister's leave to appeal these rulings, which we now reverse. We conclude that the economic loss doctrine does not bar Shister's tort claims against Bhagwanjee and Coldwell Banker and that the trial court erred in limiting Shister's damage claim against the defendants. We remand for further proceedings.

## BACKGROUND

¶ 2. The facts submitted on summary judgment are as follows. In June 2004, the Patels placed their

Mequon home on the market under a listing contract with Bhagwanjee, a licensed real estate broker with Coldwell Banker (collectively, Bhagwanjee/Coldwell). On March 12, 2005, Shister made an offer to purchase and, after numerous counteroffers, the parties had an accepted offer on March 25, 2005. On June 1, 2005, Shister purchased the Patels' home for $732,500. Prior to making the March offer to purchase, Shister was provided with a "condition report" for the property which stated that the Patels were not aware of any pending property tax reassessment.[1] The report also stated that the Patels lacked knowledge regarding any remodeling done without the required permits.[2]

¶ 3. After purchasing the home, Shister discovered that the Patels had remodeled and finished the basement without obtaining the proper permits from the city of Mequon. Shister also learned that the property was reassessed due to the city's discovery of the previously undisclosed finished basement. Bipin was aware that permits were not obtained from the city of Mequon and he informed Bhagwanjee of that fact when he was preparing the property condition report.

---

[1] When the house was first listed with Bhagwanjee and Coldwell Banker, the Patels completed a Real Estate Condition Report dated July 14, 2004, and in December of 2004 it was updated. The December 14, 2004 real estate condition report was signed by Shister on the date of the accepted offer to purchase, March 12, 2005.

[2] Paragraph C20 of the real estate condition report states: "I am aware either that remodeling affecting the property's structure or mechanical systems was done or that additions to this property were made during my period of ownership without the required permits." The Patels checked "no" in both reports. On the December 2004 report, the Patels left blank the statement on the form that they had knowledge that remodeling was done that might increase the property's assessed value.

Bipin testified that Bhagwanjee told him not to disclose the remodeling of the basement without permits on the condition report. According to Bipin, Bhagwanjee told him not to worry, "we know how to handle this kind of situation," and that she would take care of it.

¶ 4. Wesley Rineck, a city of Mequon assessor, testified that because the Patels failed to obtain permits, the city was not aware of the remodeling work and the assessed value did not reflect a finished basement. The city had not inspected the home since November 1996 and had not seen the basement finishing until November 2004. It was the Patel property "flyer" or "For Sale" sheet that alerted Rineck's predecessor to discrepancies between the sale information indicating a finished basement and the information on record at the assessor's office listing the basement as unfinished. In September 2004, the city assessor's office sent a letter to the Patels informing them that the city assessor would like to reassess the property for the 2005 tax year. Bipin testified that he informed Bhagwanjee of the letter and she told him that she would take care of it and she would contact the city for a meeting. Rineck met with a real estate broker, who he believed was Bhagwanjee, in November 2004 to discuss a reassessment of the Patels home. As a result of a reassessment on April 29, 2005, the property's assessed value increased by $59,300, from $637,200 to $696,500. The "reason for change" identified on the city of Mequon 2005 "Notice of Assessment Change" is "Basement Finish," "Revaluation."

¶ 5. Rineck testified that, absent any "red flags," a re-evaluation of the property would not have occurred until the city-wide assessment in 2009 and that the sale itself would not have triggered an early reassessment because the sale price was within ten percent of the

estimated fair market value. Rineck testified that the reassessment was due to the basement finishing, but he would have to "get[] into the computer" to see what "the cost per square foot for the basement finish" was in order to know what portion of the total increase in assessed value would be attributable to the basement. Shister averred that the $59,300 increase in his assessment resulted in $4408.34 in additional property taxes through 2008 (after which time there would have been a city-wide reassessment).

¶ 6. In the amended complaint, Shister alleged fraudulent misrepresentation under Wis. Stat. § 100.18 (2007–08)[3] and common law intentional and strict liability misrepresentation claims against the Patels. As to Bhagwanjee/Coldwell, Shister alleged breach of professional duties and intentional and strict liability misrepresentation. He sought damages of $2143.20 for retroactive costs in obtaining permits, $4408.34 in increased property taxes paid due to the reassessment of property in 2005, and statutory costs and attorney fees to be determined at trial.[4]

¶ 7. Bhagwanjee/Coldwell and the Patels moved for summary judgment contending that the economic loss doctrine bars tort claims pursuant to *Below v. Norton*, 2008 WI 77, 310 Wis. 2d 713, 751 N.W.2d 351. Shister conceded that his intentional and strict liability misrepresentation claims against the Patels should be dismissed; however, he maintained his fraudulent misrepresentation claim against the Patels under Wis. Stat.

___

[3] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[4] Shister also claimed $3380 in damages related to his purchase of a new vehicle in order to comply with undisclosed subdivision rules; however, he does not pursue that claim on leave to appeal.

§ 100.18[5] and all claims against Bhagwanjee/Coldwell.[6] Following a motion hearing, the trial court granted summary judgment in favor of Bhagwanjee/Coldwell on all claims and in favor of the Patels on all claims except for fraudulent misrepresentation under § 100.18. The damages were limited to the cost of correcting the failure to disclose the permits, because the trial court found that the damage claim based on increased taxes was too speculative and that the taxes were not "property damage." Shister appeals.

## DISCUSSION

¶ 8. The parties raise two arguments on appeal: (1) whether the economic loss doctrine bars the tort claims against Bhagwanjee/Coldwell and (2) whether the trial court erred in limiting damages to

[5] *Kailin v. Armstrong*, 2002 WI App 70, ¶¶ 43–44, 252 Wis. 2d 676, 643 N.W.2d 132 (the economic loss doctrine does not apply to fraudulent representation claims under Wis. Stat. § 100.18); *Below v. Norton*, 2008 WI 77, ¶ 43, 310 Wis. 2d 713, 751 N.W.2d 351 (purchaser of residential real estate is protected by § 100.18 from the false representations of a home seller).

[6] We note that earlier this year the legislature abrogated the holding in *Below* with respect to the ability of a buyer in a residential real estate transaction to bring a tort action against a seller for intentional misrepresentation. Wisconsin Stat. § 895.10, created by 2009 Wis. Act 4 and effective April 23, 2009, provides: "In addition to any other remedies available under law, a transferee in a residential real estate transaction may maintain an action in tort against the real estate transferor for fraud committed, or an intentional misrepresentation made, by the transferor in the residential real estate transaction." However, this new law applies only to residential real estate transactions completed on or after the effective date, April 23, 2009, *see* 2009 Wis. Act 4, § 2, and therefore does not impact Shister's claims.

the costs incurred to obtain building permits, and precluding recovery of the increased amount paid in property taxes.[7]

### Standard of Review

¶ 9. When reviewing a grant of summary judgment, we apply the standards set forth in WIS. STAT. § 802.08. Under § 802.08(2), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If our review of the record shows that the moving party has made a prima facie case for summary judgment, we examine the record to determine whether there "exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial." *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473 (1980), *abrogated on other grounds by Olstad v. Microsoft Corp.*, 2005 WI 121, 284 Wis. 2d 224, 700 N.W. 2d 139. In evaluating the affidavits and other submissions, the court must draw all reasonable inferences from the summary judgment materials in favor of the nonmoving party. *Grams*, 97 Wis. 2d at 339.

---

[7] While Bhagwanjee/Coldwell argued below that Shister could not prove professional negligence without an expert, the trial court did not rule on that issue and it was not raised on appeal. We therefore need not address it. *See Post v. Schwall*, 157 Wis. 2d 652, 657, 460 N.W.2d 794 (Ct. App. 1990).

*The Economic Loss Doctrine Does Not Bar the Buyer's Tort Claims against the Real Estate Broker.*

¶ 10. The first issue is whether Shister's tort claims against the real estate broker—Bhagwanjee and Coldwell Banker—are barred by the application of the economic loss doctrine under *Below*. Whether the economic loss doctrine bars a claim under a given set of facts is a question of law that this court reviews de novo. *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 12, 283 Wis. 2d 511, 699 N.W.2d 167; *Below*, 310 Wis. 2d 713, ¶ 19.

██

¶ 11. As explained in *Below*:

> The [economic loss doctrine] "is a judicially created doctrine that seeks to preserve the distinction between contract and tort." The ELD also seeks to protect " 'parties' freedom to allocate economic risk by contract . . . .' " Furthermore, the ELD is meant to encourage the purchaser, who is the party best situated to assess the risk of his or her economic loss, to assume, allocate, or insure against that risk. For the purposes of the ELD, we have defined an "economic loss" as being " 'damages resulting from inadequate value because the product is inferior and does not work for the general purposes for which it was . . . sold.' "

*Below*, 310 Wis. 2d 713, ¶ 24 (citations omitted). The *Below* court held that the doctrine also should be, and had been, extended to apply to residential real estate transactions. *Id.*, ¶¶ 26–28 (citing *Linden v. Cascade Stone Co.*, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, wherein the court held that the ELD applies to a contract for the construction of a house). The court noted that a residential purchaser receives contract protection as a result of the statutory protections in

230

Wis. Stat. § 709.02, which requires a property condition report, and, therefore, determined that "the ELD should bar common-law claims for intentional misrepresentation that arise in the context of residential, or noncommercial, real estate transactions when . . . the damages sought are purely economic." *Below*, 310 Wis. 2d 713, ¶ 38.

■

¶ 12. Here, Shister concedes that his damages are purely economic; however, he contends that the economic loss doctrine does not apply to his claims against Bhagwanjee/Coldwell because he had no direct contractual relationship with Bhagwanjee/Coldwell and because his claims are instead based on independent duties owing to him. Shister argues that *Below* "does not address or limit the liability of third party professionals who are involved in the real estate transaction, and whose duties and responsibilities to the plaintiff do not arise out of contract." We agree.

■

¶ 13. First, Shister's claims against Bhagwanjee/Coldwell involve the provision of brokerage services. The economic loss doctrine does not apply to claims arising from the provision of services (in contrast to the provision of goods). *Insurance Co. of N. Am. v. Cease Elec., Inc.*, 2004 WI 139, ¶ 53, 276 Wis. 2d 361, 688 N.W.2d 462. The supreme court has specifically stated that the doctrine should not apply to causes of action in tort for professional malpractice. *Id.* at ¶¶ 41, 49, 52 ("[C]ontract law is not better suited than tort law for dealing with negligently provided services. Tort law provides an incentive generally to guard against negligent conduct in the provision of services."). Nothing in *Below* undermines the supreme court's "bright line rule" set forth in *Cease Electric* that the economic loss

231

doctrine is inapplicable to claims for the negligent provision of services. *Cease Elec.*, 276 Wis. 2d 361, ¶ 52.

¶ 14. Second, there is no contractual relationship between Shister and Bhagwanjee/Coldwell. In *Below*, the economic loss doctrine precluded the buyer's intentional misrepresentation claims against the seller with whom the buyer had a contractual relationship. The economic loss doctrine holds the parties to their contract remedies when the loss potentially implicates both tort and contract relief.

¶ 15. Despite the absence of contract remedies, Bhagwanjee/Coldwell seek to extend the rationale of *Below* to encompass real estate brokers, citing black letter law to the effect that an agent stands in the shoes of the contracting seller. *See Knight v. Milwaukee Co.*, 2002 WI 27, ¶ 25, 251 Wis. 2d 10, 640 N.W.2d 773 ("whatever an agent does in the lawful prosecution of the transaction entrusted to him [or her] is the act of the principal"). However, Bhagwanjee/Coldwell ignore that Shister's tort claims are premised on alleged independent duties and responsibilities owing to him. Moreover, Shister alleges wrongful acts and omissions committed in the course of the transaction entrusted to Bhagwanjee/Coldwell. Under well-established Wisconsin law, "an agent who does an act that would be a tort if he [or she] were not then acting as an agent for another is not relieved from liability to an injured third party, simply because he [or she] was acting as an agent when he [or she] caused the injury." *Ramsden v. Farm Credit Servs.*, 223 Wis. 2d 704, 715, 590 N.W.2d 1 (Ct. App. 1998) (citing *Grube v. Daun*, 173 Wis. 2d 30, 51, 496 N.W.2d 106 (Ct. App. 1992)). "There is no insulation from liability [for an agent] under the law for making

untrue factual statements about the condition of property during the course of a sale." *Ramsden*, 223 Wis. 2d at 719.

¶ 16. Indeed, WIS. STAT. ch. 452 imposes duties on a real estate broker to all parties involved in a real estate transaction. WIS. STAT. § 452.133(1). It provides that a broker who is providing brokerage services to a person in a transaction owes, among other things, the duty to provide brokerage services honestly and fairly and with reasonable skill and care. Sec. 452.133(1)(a), (b). It further sets forth "[t]he duty to timely disclose in writing all material adverse facts that the broker knows and that the person does not know or cannot discover through reasonably vigilant observation, unless the disclosure of a material adverse fact is prohibited by law."[8] Sec. 452.133(1)(c). These statutory duties supersede brokers' duties and obligations under common law only to the extent that they are inconsistent. WIS. STAT. § 452.139(1).

¶ 17. Wisconsin courts have repeatedly recognized a real estate broker's independent duty—separate and apart from any obligations or responsibilities of the seller.

> [O]ne can make a claim against a seller's agent in a real estate sale for both negligent misrepresentation and intentional misrepresentation, grounded on either a

---

[8] A similar provision is included in WIS. ADMIN CODE ch. RL 24 (Oct. 2009), governing the conduct and ethical practices of real estate licensees. *See* WIS. ADMIN CODE § RL 24.07(2), (3) (a real estate licensee "shall disclose to each party . . . all material adverse facts" and a real estate licensee "shall be practicing competently if the licensee discloses to the parties the information suggesting the possibility of material adverse facts").

material factual statement which was untrue or on the failure to disclose a material fact when there was a duty to speak.

*Ramsden*, 223 Wis. 2d at 715–16 (citing *Grube*, 173 Wis. 2d at 55–56). Nothing in *Below* suggests that these well-established tort claims are no longer available against real estate brokers.

¶ 18. Here, Shister's claims against Bhagwanjee/ Coldwell assert an independent duty to Shister that arises outside the confines of the Patels' contractual relationship with Bhagwanjee/Coldwell. Neither *Below* nor the rationale for applying the economic loss doctrine applies to Shister's tort claims against the real estate broker.

## Damages

¶ 19. Shister additionally appeals the trial court's ruling as to his damages claim. The trial court held that Shister's damages claim was limited to the costs incurred in obtaining retroactive building permits because the damages related to the increased property assessment were too speculative and did not constitute property damage. Shister argues that the facts on summary judgment, coupled with the actual property tax bills reflecting an increase in tax liability, provide a sufficient basis for recovery. We agree that under Wis. Stat. § 100.18 and, if successful, his tort claims against Bhagwanjee/Coldwell, Shister is entitled to pursue damages for the amounts paid due to the increased property assessment.[9]

---

[9] With respect to damages, Wis. Stat. § 100.18(11)(b)2. provides:

234

¶ 20. The Patels concede that, under the terms of the offer to purchase, Shister is entitled to sue for actual damages. The Patels also acknowledge the trial court's ruling that Shister is entitled to sue for pecuniary damages under Wis. Stat. § 100.18. However, the Patels contend that, with the exception of the failure to provide for building permits, there is no pecuniary damage under § 100.18 because there was no representation as to real estate taxes and no connection between the failure to obtain building permits and the increased property taxes. Bhagwanjee/Coldwell contend that Shister is simply unable to prove damages with the requisite degree of "reasonable certainty." *See Plywood Oshkosh, Inc. v. Van's Realty & Const. of Appleton, Inc.*, 80 Wis. 2d 26, 31–32, 257 N.W.2d 847 (1977). However, Shister's summary judgment submissions, from which we are obliged to draw all reasonable inferences in favor of Shister, demonstrate otherwise.

¶ 21. As detailed above, Shister's summary judgment facts show that Bipin was aware that permits were not obtained for the basement remodeling and that he advised Bhagwanjee of that fact when he was preparing the real estate condition report. The city assessor testified that when the city learned of the finished basement from the sale flyer, he determined to reassess, and absent that additional information, the reassessment would not have taken place until the city-wide assessment in 2009. The submissions also

Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees, except that no attorney fees may be recovered from a person licensed under [Wis. Stat.] ch. 452 while that person is engaged in real estate practice, as defined in [§] 452.01(6).

235

indicate that Patel knew about the pending reassessment in September 2004, prior to the December 2004 condition report which stated that the Patels were unaware of a pending reassessment. Bipin testified that he informed Bhagwanjee of the letter from the city advising that it intended to reassess the property for 2005. Bhagwanjee told Bipin that she would take care of it. As a result of the reassessment, the property's assessed value increased by $59,300, from $637,200 to $696,500, one month prior to Shister's purchase of the home. The notice of assessment indicated that the basement finishing was the reason for the change. Shister averred that the increase resulted in $4408.34 in additional property taxes.

¶ 22. Shister contends that the defendants knew of the pending reassessment and failed to disclose it—which resulted in an unexpected additional property tax payment that he found out about only after purchasing the house. This amounts to an increased cost which was not disclosed to him. Based on the summary judgment submissions, we conclude that Shister has raised sufficient facts upon which he could prove pecuniary damages related to the increased assessment with the reasonable certainty required. *See id.* at 31–32. Therefore, if Shister were to succeed on his claim under Wis. Stat. § 100.18 or his tort claims against the broker, we conclude that he is entitled to seek damages related to the increased assessment.[10]

¶ 23. Finally, Shister asks this court to make a determination as to whether, should he succeed on his

---

[10] Shister also contends that the undisclosed refinished basement was reflected in the increased property tax. Shister has provided sufficient facts to create a genuine issue of material fact on this damage theory as well. The assessor indicated that he would have to "get into the computer" to see

common law claims, he is entitled to recover attorney fees incurred in pursuing his claims against the Patels as a result of the actions of Bhagwanjee and Coldwell. However, this issue has not yet been raised before or addressed by the trial court; we therefore decline to address it as premature. *Dawson v. Goldammer*, 2003 WI App 3, ¶ 14, 259 Wis. 2d 664, 657 N.W.2d 432.

## CONCLUSION

¶ 24. We conclude that the trial court erred in its determination that Shister's tort claims against the seller's broker Bhagwanjee/Coldwell were barred by the economic loss doctrine. We reverse the trial court's grant of summary judgment in favor of Bhagwanjee/Coldwell as to these claims. We further conclude that the trial court erred in limiting Shister's damages claim to the cost of obtaining building permits when his submissions on summary judgment set forth sufficient facts to support his claim for damages based on the increased property assessment.

*By the Court.*—Judgment reversed and cause remanded.

what portion of the total increase in assessed value would be attributable to the basement, which suggests that this could be done.