KALAHARI DEVELOPMENT, LLC, Plaintiff-Appellant,

v.

ICONICA, INC. and Lexington Insurance Co.,
Defendants-Respondents.

Court of Appeals

*No. 2011AP643. Submitted on briefs November 2, 2011
—Decided February 23, 2012.*

2012 WI App 34

(Also reported in 811 N.W.2d 825.)

454

455

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mary C. Turke, Kenneth M. Albridge III,* and *Aaron H. Kastens* of *Michael, Best & Friedrich LLP,* Madison and Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *W. Wayne Siesennop, Scott J. Thomsen,* and *Brent A. Simerson* of *Siesennop & Sullivan,* Milwaukee, and *John C. Heugel,* Green Bay.

Before Lundsten, P.J., Sherman and Blanchard, JJ.

¶ 1. LUNDSTEN, P.J. Iconica, Inc., designed and built a water park resort and conference center for Kalahari Development, LLC. Years after the project was completed, Kalahari discovered moisture damage in the walls. Kalahari brought claims for breach of contract and professional negligence against Iconica, alleging that the damage was caused by a defectively designed and installed vapor barrier. Iconica moved for summary judgment and the circuit court granted the motion. The court concluded that the contract claim was time-barred by the six-year statute of limitations applicable to contract claims. In doing so, the court rejected Kalahari's argument that its contract claim was still viable under WIS. STAT. § 893.89,[1] a general ten-year statute of repose covering lawsuits involving improvements to property. As to the negligence claim, the court concluded that the claim was barred by the economic loss doctrine. We affirm the circuit court.

### Background

¶ 2. On May 11, 1999, Kalahari and Iconica entered into a design-build contract for the design and construction of "Kalahari Resort & Conference Center,"

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

which was to include an indoor water park, hotel units and lobby, and a restaurant. The final contract price was approximately $26,200,000. In connection with the construction project, the contract also stated that Iconica would provide certain services, including architectural, engineering, and other construction services. The project was substantially complete as of May 4, 2000.

¶ 3. Beginning in May 2008, Kalahari noticed surface stains on the water park building's wall and, subsequently, discovered moisture damage to the walls. On April 23, 2010, almost ten years after the project was substantially complete, Kalahari filed suit against Iconica and its insurer, Lexington Insurance Company. Kalahari alleged that Iconica "defectively designed and/or defectively installed the vapor barriers in the walls . . . causing the moisture damage," leading Kalahari to incur "significant costs to inspect and repair the walls." The complaint stated two claims: one for breach of contract and one for professional negligence related to Iconica's performance of architectural and construction services under the contract.

¶ 4. The circuit court dismissed both claims on summary judgment. Kalahari appeals.

### Discussion

*I. Whether Kalahari's Contract Claim Is Time-Barred*

¶ 5. The propriety of the circuit court's decision to dismiss Kalahari's contract claim turns on the proper interpretation of WIS. STAT. § 893.89. The applicable principles of statutory construction were aptly summarized in *State v. Carey*, 2004 WI App 83, 272 Wis. 2d 697, 679 N.W.2d 910:

> Statutory construction is a question of law that we review de novo. "When interpreting a statute, our

purpose is to discern legislative intent. To this end, we look first to the language of the statute as the best indication of legislative intent. Additionally, we may examine the statute's context and history." Further, we will reject a literal reading of a statute that would lead to an absurd or unreasonable result that does not reflect the legislature's intent. In interpreting a statute, we are to presume that "the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute."

*Id.*, ¶ 8 (citations omitted).

¶ 6. Generally speaking, Wɪꜱ. Sᴛᴀᴛ. § 893.89 provides that persons involved in improvements to real property may not be sued more than ten years after substantial completion of a project.[2] Although § 893.89

---

[2] Wɪꜱᴄᴏɴꜱɪɴ Sᴛᴀᴛ. § 893.89 reads, in full:

**893.89 Action for injury resulting from improvements to real property. (1)** In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.

**(2)** Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

**(3)(a)** Except as provided in pars. (b) and (c), if a person sustains damages as the result of a deficiency or defect in an improvement to real property, and the statute of limitations applicable to the damages bars commencement of the cause of

458

imposes a ten-year time limit on such lawsuits, the statute does not extend the time for bringing lawsuits that are otherwise time-barred by statutes of limitations. Stated differently, § 893.89 is not a statute of limitations applicable to all causes of action relating to improvements to real property. Instead, § 893.89 is a sort of catch-all provision that imposes a time limit on many lawsuits relating to property improvements that

action before the end of the exposure period, the statute of limitations applicable to the damages applies.

(b) If, as the result of a deficiency or defect in an improvement to real property, a person sustains damages during the period beginning on the first day of the 8th year and ending on the last day of the 10th year after the substantial completion of the improvement to real property, the time for commencing the action for the damages is extended for 3 years after the date on which the damages occurred.

(c) An action for contribution is not barred due to the accrual of the cause of action for contribution beyond the end of the exposure period if the underlying action that the contribution action is based on is extended under par. (b).

(4) This section does not apply to any of the following:

(a) A person who commits fraud, concealment or misrepresentation related to a deficiency or defect in the improvement to real property.

(b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.

(c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.

(d) Damages that were sustained before April 29, 1994.

(5) Except as provided in sub. (4), this section applies to improvements to real property substantially completed before, on or after April 29, 1994.

(6) This section does not affect the rights of any person under ch. 102.

459

are not otherwise time-barred within ten years after substantial completion. As our supreme court explained, § 893.89 is "a statute of repose," and its purpose is "to provide protection from long-term liability for those *involved in the improvement* to real property." *See Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶¶ 13, 62, 283 Wis. 2d 1, 698 N.W.2d 794.

¶ 7. The structure of, and some of the wording in, WIS. STAT. § 893.89 make it difficult to follow. Accordingly, clarity will be served if we first provide our interpretation of the statute, focusing on its application to contract actions against persons involved in real property improvements, and then address Kalahari's arguments disputing our interpretation.[3]

¶ 8. We begin with the heart of WIS. STAT. § 893.89, its ten-year limitation period. Section 893.89(2) provides that "no cause of action . . . may be commenced . . . against any person involved in the improvement to real property after the end of the exposure period." This is a ten-year time limit because "exposure period" is defined as "the 10 years immediately following the date of substantial completion of the improvement to real property." WIS. STAT. § 893.89(1).

¶ 9. If the reader stopped with WIS. STAT. § 893.89(1) and (2), he or she might conclude that this ten-year limit has broad application and, for example, effectively gives a building owner ten years after substantial completion of his or her building to discover a problem and bring suit against a builder or designer. But the next subsection, § 893.89(3), directs that, if a cause of action is time-barred by a statute of limitations

---

[3] Iconica argues that WIS. STAT. § 893.89 applies only to tort claims and, therefore, there is no need to analyze the application of the statute's provisions to a contract claim. This, however, is Iconica's alternative argument, and we do not address it.

before it would be barred under § 893.89, then that statute of limitations applies. Subsection (3)(a) provides, in part:

> [I]f a person sustains damages . . . and the statute of limitations applicable to the damages bars commencement of the cause of action before the end of [§ 893.89's ten-year] exposure period, the statute of limitations applicable to the damages applies.

Thus, subsection (3)(a) tells litigants and courts to determine whether the damages sought are based on a cause of action that is controlled by a statute of limitations and, if so, determine whether that statute acts to bar the claim prior to the time it would be barred by § 893.89.[4]

■

¶ 10. Turning to the facts here, Kalahari sought contract damages resulting from an "improvement to real property." Therefore, at a minimum, Kalahari was required to bring its contract action within Wis. Stat. § 893.89's ten-year time limit. But as § 893.89(3)(a) instructs, we look to see whether the contract damages sought are time-barred by a statute of limitations before they would be barred under § 893.89. That search quickly leads to the statute of limitations applicable to actions for contract damages, Wis. Stat. § 893.43.[5] It is undisputed that, under this six-year statute of limitations, Kalahari's contract claim would be barred because the alleged breach occurred no later than May 2000, and this action was commenced in April 2010. *See CLL Assocs. Ltd. P'ship v. Arrowhead Pac.*

---

[4] All "subsection" references in this opinion are references to subsections in Wis. Stat. § 893.89. None of the other statutes we discuss have subsections.

[5] Wisconsin Stat. § 893.43 provides:

Corp., 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993) ("under sec. 893.43, a contract cause of action accrues at the moment the contract is breached").

¶ 11. In sum, when an action is one for contract damages, WIS. STAT. § 893.89(3)(a) directs that its ten-year time limit be compared with the time limit applicable to contract actions to see which is shorter, and that the shorter limit applies. The result is that Kalahari's contract claim is time-barred by the statute of limitations on contract actions. In the following two subsections, we address and reject Kalahari's arguments to the contrary.[6]

## A. *WISCONSIN STAT. § 893.89(3)(a)'s Reference To "Damages"*

¶ 12. Kalahari's first argument focuses on the word "damages" in WIS. STAT. § 893.89(3)(a). The disputed language reads:

> An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred.

[6] In this part of our opinion, we address only Kalahari's contract claim. The parties apparently agree that, regardless of WIS. STAT. § 893.89, Kalahari's negligence claim is timely because the six-year statute of limitations on non-contract actions began to run in 2008 when Kalahari discovered the damage. *See* WIS. STAT. § 893.52 (stating a six-year statute of limitations for non-contractual actions related to damage to property) and *Hansen v. A.H. Robins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983) (holding that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first"). Notably, many non-contract actions are barred by § 893.89's ten-year time limit. For example, Kalahari's negligence action might have been barred by § 893.89 if it had been brought at a later date.

[I]f a person sustains damages . . . and the statute of limitations applicable to the damages bars commencement of the cause of action before the end of [§ 893.89's ten-year] exposure period, the statute of limitations applicable to the damages applies.

Wis. Stat. § 893.89(3)(a). Kalahari acknowledges that this language directs that some statutes of limitations apply to impose a shorter time limit. Kalahari argues, however, that Wis. Stat. § 893.43 is not the type of statute of limitations referenced in subsection (3)(a). Kalahari contends that § 893.43 is directed at *causes of action,* in contrast to other statutes of limitations, covered by subsection (3)(a), directed at *damages.* The distinction Kalahari makes does not help it here. Even if some causes of action are excluded from subsection (3)(a) because they do not seek "damages," here Kalahari is seeking damages.

¶ 13. Kalahari's complaint seeks monetary damages for breach of contract. The damages sought include "without limitation, the cost to inspect and repair the walls of Kalahari's indoor water park." Subsection (3)(a) directs us to look for the "statute of limitations applicable to the damages" sought by Kalahari, and that statute of limitations is Wis. Stat. § 893.43. Because § 893.43 imposes a six-year time limit and that time passed, in the words of subsection (3)(a), "before the end of [§ 893.89's ten-year] exposure period," Kalahari's contract action is time-barred.

¶ 14. We acknowledge that the wording Kalahari relies on might make a difference in some situations. Kalahari contrasts statutes like Wis. Stat. § 893.43, that place a time limit on specified actions without respect to the remedy sought, with statutes that place a time limit on defined actions to recover "damages." Kalahari points to Wis. Stat. § 893.52 as an example of

a statute directed at damages. That statute places a time limit on bringing non-contract actions "to recover damages."[7] However, whatever difference this wording might make in other situations, it does not help Kalahari. Even though § 893.43 is not limited to contract actions seeking damages, that statute nonetheless applies to such actions, and that is what we have here.

### B. WISCONSIN STAT. § 893.89(3)(b)'s Provision That Extends The Ten-Year Time Period

¶ 15. Kalahari next argues that, regardless whether its contract claim would otherwise be time-barred by WIS. STAT. § 893.89(3)(a)'s directive to look for applicable statutes of limitations, a different part of subsection (3)(a) we have yet to discuss nonetheless makes § 893.89's ten-year time limit applicable. Kalahari relies on the introductory clause to subsection (3)(a) that states "[e]xcept as provided in pars. (b) and (c)." Kalahari asserts that its situation fits under subsection (3)(b) and, therefore, its claim is an exception to subsection (3)(a).

¶ 16. We first explain the purpose and function of subsection (3)(b). We then explain why Kalahari's proposed interpretation of subsection (3)(a)'s "exception" language leads to absurd results and must be rejected.

¶ 17. In drafting subsection (3)(b), the legislature clearly intended to give a plaintiff a fair opportunity to discover and file a suit—not otherwise time-barred— when the damage suffered occurs within ten years of

---

[7] WISCONSIN STAT. § 893.52 provides:

An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed.

substantial completion of a project. The legislature anticipated that, if damage occurs toward the end of the ten-year period, there might not be sufficient time to identify the damage, investigate its cause, and take the steps necessary to file a lawsuit. The mechanism giving plaintiffs additional time is subsection (3)(b). Under this subsection, if the damage occurs within three years of the expiration of the ten-year period, the time for filing suit is extended for three years after the date the damage occurred.

¶ 18. Again, Kalahari's argument is that subsection (3)(a)'s directive—to look to see whether there is a shorter time limit elsewhere in the statutes—does not apply because of subsection (3)(a)'s introductory language: "Except as provided in pars. (b) and (c)." Kalahari contends that, because its damage occurred after year 7, and because the timing of that damage falls within the three-year window described in "(b)," Kalahari's situation is an exception contemplated by the introductory language. Kalahari does not, however, go on to explain why its interpretation might make sense. We agree with Iconica that Kalahari's interpretation is unreasonable and would lead to an absurd result in this and other cases.

¶ 19. As applied to the facts before us, subsection (3)(b) is not, in any logical sense, an exception to subsection (3)(a). Subsection (3)(a) makes clear that § 893.89's ten-year time limit is not intended to override shorter applicable statutes of limitations, such as the shorter six-year statute of limitations on contract actions plainly applicable here. Since Kalahari's action was time-barred after six years, it makes no sense to say that the subsection (3)(b) exception, extending the ten-year time limit, applies because the damage occurred after year 7.

¶ 20. More generally, treating subsection (3)(b) as an exception to subsection (3)(a) leads to the absurd result that many lawsuits based on damage that occurs earlier in time *would be* barred, whereas otherwise identical lawsuits based on damage that occurs later in time *would not be* barred. A simple example exposes this absurdity. Suppose a roofing contractor working under a contract installs a defective roof. Suppose later the roof fails and the homeowner sues for damages alleging breach of contract. The statute of limitations on contract actions would bar that claim six years after the breach/installation and, as we have explained, § 893.89(3)(a) tells us to apply that six-year time limit. If we were to accept Kalahari's view of how subsections (3)(a) and (3)(b) interact, the homeowner's ability to sue would skip year 7, but be revived in years 8, 9, or 10. That is, if the homeowner is lucky enough to sustain the damage in years 8, 9, or 10, he could sue. But if he sustained damage in year 7, he could not. This is the result of Kalahari's interpretation because, under Kalahari's interpretation of subsection (3)(a)'s "exception" language, subsection (3)(b) applies only when damage occurs at the start of year 8 or later—it does not apply when damage occurs during year 7. This is nonsense.

¶ 21. Our rejection of Kalahari's interpretation is consistent with the rule that we are to presume that " 'the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute' " and "we will reject a literal reading of a statute that would lead to an absurd or unreasonable result that does not reflect the legislature's intent." *See Carey,* 272 Wis. 2d 697, ¶ 8 (citation omitted). Returning to the purpose of § 893.89, "to provide protection from long-term liability for those *involved in the improvement* to

real property," *Kohn*, 283 Wis. 2d 1, ¶ 62, we are unable to reconcile this purpose with Kalahari's proffered interpretation and, therefore, reject it.

¶ 22. We recognize that our analysis might render the "[e]xcept as provided in pars. (b) and (c)" language in subsection (3)(a) meaningless. However, whether there are situations in which it makes sense to treat subsections (3)(b) or (3)(c) as an exception to subsection (3)(a) is a question we leave for another day.

## II. Whether Kalahari's Professional Negligence Claim Is Barred By The Economic Loss Doctrine

¶ 23. Kalahari acknowledges that, when a contract covers both products and services, the economic loss doctrine bars negligence claims if the predominant purpose of the contract is to provide a product. As the supreme court explained in *Linden v. Cascade Stone Co.*, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, courts "use the predominant purpose test to determine whether a mixed contract for products and services is predominantly a sale of a product and therefore subject to the economic loss doctrine, or predominantly a contract for services and therefore not subject to the economic loss doctrine." *Id.*, ¶ 8 (citations omitted).

¶ 24. Kalahari argues, however, that the circuit court erroneously granted summary judgment here because, at a minimum, there are material factual disputes bearing on whether the "predominant purpose" of the contract was to provide a product or to provide a service. In the alternative, Kalahari argues that the predominant purpose test is inapplicable to negligence claims based on *professional* services and, therefore, the

467

economic loss doctrine does not bar its negligence claim. We reject Kalahari's arguments because they are contrary to binding precedent.

### A. Predominant Purpose Of The Contract

¶ 25. Whether a contract is for goods or services is a question of law that we review de novo. *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶ 42, 293 Wis. 2d 410, 716 N.W.2d 822. When a contract is for a mixture of products and services, we apply the predominant purpose test, which is a totality of the circumstances test. *See id.* (listing various factors); *see also id.*, ¶ 42 n.11.

¶ 26. The contract in this case contained three components that are key for purposes of resolving Kalahari's predominant purpose argument. The three components are Iconica's promise to provide (1) architectural and engineering services, (2) other services necessary for construction, including supervision and labor, and (3) construction materials. As we explain below, two supreme court cases addressing substantially similar situations have concluded that the contracts in those cases were predominantly for a product. Because Kalahari fails to persuasively distinguish those cases, we conclude that we are bound to follow their result here.

¶ 27. In *Linden*, 283 Wis. 2d 606, the supreme court applied the predominant purpose test to a contract for the construction of a custom-built house that provided both for services in conjunction with constructing the house and for the materials. *See id.*, ¶¶ 23–25 (stating that the services included " '[p]rovide

468

excavation,' 'drain tile installed,' and 'spray mastic waterproofing applied' "). The court concluded that the predominant purpose was "for a product, a new house." *Id.*, ¶ 25.

¶ 28. In *1325 North Van Buren*, 293 Wis. 2d 410, the supreme court applied the predominant purpose test to a contract for "renovating an existing industrial warehouse into a 42–unit condominium building with attached parking garages." *Id.*, ¶¶ 2, 42–50. The court summarized the contract at issue as follows: "In addition to providing the necessary materials for renovation and construction, [the contractor] was to provide construction management services, meaning it had to hire, coordinate, and supervise the numerous subcontractors, and generally manage the project to ensure the renovation was completed on time and within budget." *Id.*, ¶ 7. The court concluded that the contract was predominantly for a product, "a condominium complex." *Id.*, ¶ 50.

¶ 29. Thus, our supreme court has addressed construction contracts involving both construction services and materials, and has concluded that those contracts were predominantly for a product, namely, the final structure. Kalahari nonetheless argues that a unique aspect of the contract here distinguishes it from the contracts in these cases. Specifically, Kalahari argues that this case is different because Iconica provided architectural and engineering services, which are types of services not discussed in *Linden* and *1325 North Van Buren*. We are not persuaded.

¶ 30. Assuming without deciding that there is some meaningful distinction between the types of services generally involved in supervising construction projects and the "architectural and engineering services" involved here, the latter services were a small

fraction of the cost of the entire project. Kalahari acknowledges that, out of approximately $7.1 million allocated for the water park, only $240,000 was for "architectural and engineering services." Overall, the record reveals that approximately $1,091,000 was allocated to architectural and engineering services out of an approximately $26,200,000 final contract price. This equates to about 4% of the contract price. That means that 96% of the contract is not distinguishable from the contracts in *Linden* and *1325 North Van Buren*.

¶ 31. The question then is whether we should treat this construction contract differently than the construction contracts in *Linden* and *1325 North Van Buren* because a small portion is attributable to a particular type of service. As we explain in the subsection below, our supreme court has declined to treat some types of services differently for purposes of applying the economic loss doctrine. Apart from the proposition that its architectural and engineering services should be treated differently, Kalahari provides, and we discern, no reason why such a small component of the contract, as measured by price, should matter.

¶ 32. Accordingly, we conclude that, just as the owner in *Linden* primarily contracted for a house, and the owner in *1325 North Van Buren* primarily contracted for a condominium complex, Kalahari primarily contracted for a water park resort and convention center.

¶ 33. We conclude this part of our discussion with two related observations. First, we acknowledge that a predominant purpose test analysis normally involves the application of that multi-factor test to particular facts. We do not engage in this exercise here because it would be a pointless endeavor. Given Kalahari's failure to present a persuasive reason why the result here

should be different than the results in *Linden* and *1325 North Van Buren*, it necessarily means that an analysis of the individual factors would produce the same result.

¶ 34. Second, we need not dwell on Kalahari's contention that Iconica failed to make a prima facie factual showing supporting summary judgment. Kalahari appears to argue that Iconica's submissions do not provide enough detail regarding the cost of materials compared with the cost of services. But, here again, Kalahari presents no reason why such facts would matter in light of *Linden* and *1325 North Van Buren*. For example, Kalahari does not suggest that more facts might show the differential in material costs and service costs in this case is so great that this contract is different in kind than the contracts in those supreme court cases. Notably, the *Linden* court acknowledged that it was "impossible to separate the cost of the materials from the cost of the services," but nonetheless concluded on summary judgment that the contract was for a product. *See Linden*, 283 Wis. 2d 606, ¶¶ 23–25, 32.

### B. Professional Services And The Economic Loss Doctrine

¶ 35. Relying on *Insurance Co. of North America v. Cease Electric Inc.*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462, Kalahari asserts that tort actions that include an allegation of professional negligence are categorically exempted from the economic loss doctrine, regardless of the predominant purpose of the contract. Kalahari asserts that applying the economic loss doctrine to bar Kalahari's negligence claim conflicts with *Cease Electric* because that case teaches, in Kalahari's words, that the doctrine "was never meant to bar tort

claims for malpractice against professionals such as architects." *Cease Electric*, however, contains a different lesson.

¶ 36. *Cease Electric* explains that, when determining whether the economic loss doctrine should bar a claim, a court must first determine if a contract is for a product or a service. *See id.*, ¶ 14. The case further teaches that, if the contract is for a service (either professional or nonprofessional), then the economic loss doctrine's bar will not apply to a tort claim. *See id.*, ¶¶ 48–53 (declining to distinguish between professional and nonprofessional services). The court stated that it was adopting a "bright line rule" that "the economic loss doctrine does not apply to contracts for services." *Id.*, ¶¶ 52–53. And, we know from subsequent supreme court cases that where, as here, a contract is for a mixture of products and services, we apply the predominant purpose test to determine if a contract is for products or services. *See Linden*, 283 Wis. 2d 606, ¶ 8. If it is predominantly a contract for a service, then we apply the rule from *Cease Electric* that the economic loss doctrine does not bar a tort claim. *See Linden*, 283 Wis. 2d 606, ¶ 8. Nothing in *Cease Electric*, properly read, stands for the proposition that courts should treat some categories of services differently for purposes of the economic loss doctrine.

¶ 37. Kalahari also relies on our statement in *Shister v. Patel*, 2009 WI App 163, 322 Wis. 2d 222, 776 N.W.2d 632, that "[t]he supreme court [in *Cease Electric*] has specifically stated that the [economic loss] doctrine should not apply to causes of action in tort for professional malpractice." *Id.*, ¶ 13. This wording places an unfortunate emphasis on "professional," but it was not meant to suggest that the economic loss doctrine never applies when alleged negligence involves

professional negligence. Rather, in *Shister*, we were referencing a situation in which it had already been determined that a contract was for services and, as *Cease Electric* teaches, this meant that the economic loss doctrine did not bar the tort claim. The pertinent discussion in *Shister* did not turn on the nature of the services.

¶ 38. The remainder of Kalahari's arguments are directed at policy reasons for why, under the economic loss doctrine and the predominant purpose test, professional services should be treated differently than non-professional services. However, we are bound by the *Cease Electric* court's decision to reject such a distinction.

## *Conclusion*

¶ 39. For the reasons discussed, we affirm the circuit court.

*By the Court.*—Order affirmed.