Pamela PETER, individually and as Personal
Representative of the Estate of Donald O. Peter,
Plaintiff-Appellant,

v.

SPRINKMANN SONS CORPORATION,
Defendant-Respondent,

METROPOLITAN LIFE INS. CO., Defendant,

UNITED HEALTH CARE SERVICE,
Subrogated Defendant.

Court of Appeals

*No. 2014AP923. Submitted on briefs November 4, 2014.
—Decided January 27, 2015.*

2015 WI App 17

(Also reported in 860 N.W.2d 308.)

411

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven R. Penn* and *Jill A. Rakauski* of *Penn Rakauski*, Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James A. Niquet, Laura E. Schuett* and *Stacy K. Luell* of *Crivello Carlson S.C.*, Milwaukee.

Before Kessler and Brennan, JJ., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Pamela Peter appeals the summary judgment order dismissing her claim against

Sprinkmann Corporation seeking damages in an asbestos case involving the death of her husband, Donald Peter. The circuit court ruled that her claim was barred by WIS. STAT. § 893.89, the construction statute of repose. Peter claims that § 893.89, does not bar her claim because: (1) the damages exception in § 893.89(4)(d), allowing claims for "[d]amages that were sustained before April 29, 1994" applies because Donald's exposure to asbestos occurred long before April 29, 1994; and (2) Sprinkmann's work with the asbestos insulation that allegedly gave Donald mesothelioma was routine maintenance and repairs, not improvement to real property. We agree with Sprinkmann that Peter's claim does not fall within the exception to the statute, but reject its argument that its work was an improvement to real property. Therefore, we reverse the summary judgment order and remand for further proceeding consistent with this opinion.

## BACKGROUND

¶ 2. In 1959, Donald started work as a maintenance machinist at the Pabst Brewery. He worked in the Pabst "Bottle House" for over thirty-six years. During that time, Sprinkmann had an agreement with Pabst to install, maintain, and repair the asbestos insulation on the steam pipes on the various pieces of equipment used in production. In May 2012, Donald was diagnosed with malignant pleural mesothelioma. Donald sued Sprinkmann alleging that his exposure to Sprinkmann's "installation, removal and maintenance of asbestos containing pipe and block insulation at Pabst Brewery" caused his injury. After Donald died in October 2013, his wife amended the complaint to add a wrongful death claim.

417

¶ 3. Sprinkmann's Vice-President, Ralph Van Beck, testified at his deposition that the insulation on the soakers and pasteurizer machines in the Bottle House were in need of "constant repair" and Sprinkmann had at least one full-time employee whose *only* job was to repair insulation at Pabst. Another Sprinkmann employee testified at deposition that Sprinkmann had an employee who worked at Pabst "100% of the time" doing repairs to the pipe insulation until 1979 when Sprinkmann lost the Pabst contract.

¶ 4. During discovery, Sprinkmann produced over 20,000 documents that detailed the work it performed at Pabst, most of which were "job files" that specifically related to the maintenance and repair work it did in the Pabst Bottle House.

¶ 5. Sprinkmann filed a motion seeking summary judgment on two grounds: (1) Peter cannot show that Sprinkmann's products caused Donald's injuries; and (2) the construction statute of repose bars Peter's claims. The circuit court agreed with Sprinkmann that the statute barred Peter's claims and dismissed the action. The circuit court ruled that the damages exception in the statute of repose did not apply and that Sprinkmann's work was improvement to real property. It did not address causation. Peter now appeals.

## DISCUSSION

*A. Standard of Review.*

■■

¶ 6. We review a grant of summary judgment independently, applying the same standards as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212

Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). We must examine the pleadings to determine whether the claims have been stated, and then determine whether any material factual issues have been presented. *Id.* at 232–33. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).[1] Here, the material facts are undisputed with regard to these issues.

¶ 7. The issue is whether the construction statute of repose bars Peter's lawsuit either because Sprinkmann's work was an improvement to real property or because the lawsuit does not fall within the statute's damages exception. Interpretation of a statute is a question of law we review without deference to the circuit court. *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 17, 245 Wis. 2d 560, 630 N.W.2d 517. When we interpret a statute, we try "to ascertain and give effect to the statute's intended purpose." *See Wenke v. Gehl Co.*, 2004 WI 103, ¶ 32, 274 Wis. 2d 220, 682 N.W.2d 405. To do so, we start with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We give the statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* We reject an interpretation that leads to an absurd or unreasonable result and we try to give "reasonable effect to every word, in order to avoid surplusage." *Id.*, ¶ 46. Moreover, if "a legal term has a well-settled

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

meaning within the law of the jurisdiction, it is presumed that the legislature intended to convey such meaning when using that term in the statute." *Thomas v. Iowa Nat'l Mut. Ins. Co.*, 132 Wis. 2d 18, 23, 390 N.W.2d 572 (Ct. App. 1986).

¶ 8. The statute involved, WIS. STAT. § 893.89, provides in pertinent part:

**Action for injury resulting from improvements to real property. (1)** *In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.*

**(2)** Except as provided in sub. (3), *no cause of action may accrue and no action may be commenced,* including an action for contribution or indemnity, against the owner or occupier of the property or *against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.* This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

. . . .

**(4)** This section does not apply to any of the following:

(a) A person who commits fraud, concealment or misrepresentation related to a deficiency or defect in the improvement to real property.

420

(b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.

(c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.

(d) *Damages that were sustained before April 29, 1994.*

(Emphasis added.)

*B. Damages exception.*

■■

¶ 9. The first issue is whether the damages exception in Wɪѕ. Sᴛᴀᴛ. § 893.89 applies. When the legislature enacted the construction statute of repose, it carved out an exception to ensure that the new statute did not extinguish any then-existing valid claims. The exception provides: "(4) This section does not apply to any of the following: ... (d) Damages that were sustained before April 29, 1994."

¶ 10. Both parties observe that this exception has resulted in split decisions in our circuit courts. Some circuit courts have found that the exception removes asbestos cases from the statute of repose bar based on expert testimony opining that the plaintiff's lungs were damaged at the time he or she was exposed to asbestos. In other words, damages occur at the time the plaintiff inhales the asbestos fibers and long before any symptoms or diagnosis of mesothelioma. Other circuit courts, however, have ruled that the damages exception in the statute of repose does not save the asbestos cases because "damages" in Wɪѕ. Sᴛᴀᴛ. § 893.89(4)(d) means *legally actionable damages.* In

421

other words, the plaintiff must show that he or she could have sued before April 29, 1994.

¶ 11. As these asbestos cases filter into the court system, plaintiffs argue that their damages *did* occur before April 29, 1994, based on their expert's opinion that their lungs were physically damaged at the time of exposure. Because asbestos exposure occurred before April 1994, the plaintiffs' reason that their cases fall under the damages exception and are not barred by the statute's ten-year repose period. In response, the defendants in these cases contend that the term "damages" in the statute of repose requires that the plaintiff have legally actionable damages before April 29, 1994. Based on the defendant's position, an asbestos plaintiff would not have a legally cognizable action until he or she showed symptoms of or was diagnosed with mesothelioma, which does not occur until thirty or forty years after exposure. Accordingly, by the time a plaintiff showed symptoms, the statute of repose had already passed and therefore barred any asbestos claim stemming from improvement to real property.

¶ 12. Peter makes the argument here that her husband was damaged long before April 29, 1994, as evidenced by her expert's opinion that physical injury occurs when a person is exposed to and inhales asbestos fibers. Peter submitted evidence showing that Donald worked in a building at Pabst where he was exposed to and inhaled asbestos fibers beginning in 1959 and continuing for many years. The question we must decide then is whether the legislature intended the word "damages" to mean a physical injury (inhalation of asbestos fibers during exposure) or whether it intended the term "damages" to mean legally actionable injury (diagnosis of mesothelioma or manifestation of symptoms upon which a lawsuit could be filed).

¶ 13. We start with the language of the statute. The legislature used the phrase "damages that were sustained." In looking at the language of the statute, we conclude that the only reasonable interpretation is that damages means a legally compensable injury.

██ ██

¶ 14. First, our supreme court has given the word "damages" a specific and legal definition: "pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another." *Thomas*, 132 Wis. 2d at 24 (quoted source omitted). This specific definition supports our conclusion that *damages* means a legally cognizable claim for injuries or a compensable right to recover for injuries. Applying this definition to Peter's case, Peter did not have any legally cognizable claim for injuries before April 29, 1994, because Donald was not diagnosed with mesothelioma until 2012. It was not until 2012 that the Peters could sue Sprinkmann.

¶ 15. Second, the legislature used both the term "damages" and the term "injury" in a single sentence in the statute of repose: "no cause of action may accrue and no action may be commenced . . . to recover *damages* for any *injury* to property, for any *injury* to the person, or for wrongful death . . . ." WIS. STAT. § 893.89(2) (emphasis added). Based on the legislature's use of both words in the same sentence, we must presume that damages has a different meaning than injury. Damages cannot mean injury because it would render the quoted sentence absurd. Rather, the sentence makes damages mean something other than injury—something that a party can recover as a result of the injury.

¶ 16. Third, the legislature used the plural *damages* in the exception, not the singular *damage*. Although Peter argues that the singular and plural of a word have identical meanings, that is not the case with the terms damage and damages. Each has a distinct legal meaning:

> Damages is not simply the plural of damage, it is a legal term connoting compensation for injury, not the injury itself. BLACK's LAW DICTIONARY makes the distinction clear within the definition of "damage" itself. Damage means "loss, injury, or deterioration." BLACK's LAW DICTIONARY 389 (6th Ed. 1990.) *"The word is to be distinguished from its plural, 'damages' which means a compensation in money for a loss or damage." Id.* The Restatement of the Law of Torts, which the Wisconsin Supreme Court usually follows, also defines the term "damages" in this way. *See* RESTATEMENT (SECOND) OF TORTS § 12A ("the word 'damages' is used throughout the Restatement of this Subject to denote a sum of money awarded to a person injured by the tort of another.").

*Anderson v. Proctor & Gamble Paper Prod. Co.,* No. 11–C-61, 2013 WL 5506875 at *2 (E.D. Wis. Oct. 4, 2013). The Federal District Court, in ruling in *Anderson* that the damages exception of the statute of repose did not apply, reasoned: "It strains the language to say that someone 'sustains damages' when he becomes exposed to asbestos, because at that point no damages are even available. Legislatures may be presumed to understand such an important distinction, particularly in a statute governing legal claims." *Id.* at *4. Although we are not bound by the federal court's opinion, we find it persuasive.

¶ 17. Fourth, the purpose of the statute of repose supports our determination. The purpose of the construction statute of repose is " 'to provide protection from long-term liability for those *involved in the improvement* to real property.' " *Kalahari Dev., LLC v. Iconica, Inc.*, 2012 WI App 34, ¶ 6, 340 Wis. 2d 454, 811 N.W.2d 825 (quoted source omitted). The legislature enacts a statute of repose to cut off "a right of action regardless of the time of accrual" because it has expressly decided "not to recognize rights after the conclusion of the repose period." *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 38, 283 Wis. 2d 1, 698 N.W.2d 794 (quotation marks, brackets and quoted sources omitted). The statute of repose acts to "extinguish[] the right of recovery altogether." *Id.* Further, the purpose of the damages exception was " 'to avoid an ex post facto extinguishing of *claims* that were valid before [the effective date of the statute, April 29, 1994].' " *Anderson*, 2013 WL 5506875 at *4 (quoted source omitted; emphasis added; emphasis omitted). The legislative history of the exception is compelling. As we have seen, the exception's purpose was to make sure that someone who had a valid claim before April 29, 1994, could act on that claim. Given the purpose of the statute of repose in general and the reason for the damages exception in particular, it would not make sense to interpret "damages" to mean injury.

¶ 18. In concluding that damages means legally actionable damages, it becomes clear that Peter's claim is not saved by the exception. Peter did not have an actionable claim for damages before April 29, 1994, and, therefore the damages exception in Wis. Stat. § 893.89(4) does not apply.

¶ 19. Although this interpretation may seem harsh to asbestos plaintiffs who will not even know they have a claim until long after the statute of repose has barred their action (assuming it arises from an improvement to real property), "[i]t is not our function as the judiciary to construct an asbestos-related exception to the statute of repose in construction cases." *See Graver v. Foster Wheeler Corp.*, 96 A.3d 383, 389 (Pa. Super. Ct. 2014). That role properly lies with the legislature.

C. *Improvement to real property.*

¶ 20. The next issue is whether Sprinkmann's work during Peter's employment was an improvement to real property or whether it was routine repairs and maintenance. WISCONSIN STAT. § 893.89 applies to bar Peter's action only if Sprinkmann's work was an improvement to real property.

¶ 21. The statute bars an action against "any person involved in the improvement to real property" if an action is not brought within ten years of the substantial completion of the improvement. It is undisputed that this action was not brought within ten years of 1979, the undisputed latest possible date on which Sprinkmann stopped doing work at Pabst. Thus, the determinative question is whether Sprinkmann's work was an "improvement to real property." The parties disagree on the answer to this question. Peter argues that the discovery documents and deposition testimony prove that Sprinkmann's work was routine maintenance and repair to the insulation on the machine pipes. Sprinkmann counters that its work was "multiple installations of a product," namely insulation, and that installing insulation is an improvement to real property.

██ ██

¶ 22. "Whether an item is an 'improvement to real property' under § 893.89 is a question of law that we review de novo." *Kohn*, 283 Wis. 2d 1, ¶ 12. In determining whether something qualifies as an improvement to real property, we apply the following test: "A permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Id.*, ¶ 17 (brackets, quotation marks and citation omitted). Here, the evidence shows that Sprinkmann had an employee working at Pabst on a daily basis doing regular, daily repairs to the insulation on the machinery pipes. These repairs were not permanent additions. Rather, they were maintenance done to keep the pipes in proper condition. *See Hocking v. City of Dodgeville*, 2010 WI 59, ¶ 48, 326 Wis. 2d 155, 785 N.W.2d 398 (defining maintenance as the "work of keeping something in proper condition; upkeep") (quotation marks and citation omitted).

¶ 23. The purpose of the statute of repose is to protect contractors who are involved in permanent improvements to real property. Daily repairs are not improvements to real property as that phrase is used in the statute of repose. The legislature has chosen to protect persons or entities which make permanent improvements to real property, not to absolve those who make regular repairs or do maintenance work. This distinction is reasonable because improvements to real property have a completion date whereas regular repairs and maintenance can continue *ad infinitum. See Kohn*, 283 Wis. 2d 1, ¶ 71 (the statute does

not protect conduct that precedes or follows the improvement to real property).

██ ██

¶ 24. Sprinkmann argues that its work at Pabst was not repairs or routine maintenance, but instead was "multiple installations" of insulation over and over and because installation of insulation is an improvement to real property, it falls under the protection of the statute. We agree that the initial installation of insulation into a building or house may be considered an improvement to real property. However, that is not the situation that we have before us. Peter does not claim that Donald was exposed to asbestos from the initial installation of all the insulation on the Pabst pipes. Rather, her claim is that his injury occurred during the daily exposure when Sprinkmann's employee performed regular maintenance and repair work to the insulation around the pipes. This is a significant and determinative factor in this case. As Peter explains, "[i]t is Sprinkmann's act of disturbing the insulation during maintenance and repair activities and the failure to warn the plaintiff when disturbing that insulation which caused the harm in this case."

¶ 25. Accordingly, because we conclude that Sprinkmann's daily repairs on the insulation at Pabst were not improvements to real property, the statute of repose does not apply to bar Peter's action and therefore, we reverse the summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.