**2022 WI APP 10**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP1961

†Petition for Review filed

Complete Title of Case:

**THOMAS WASCHER AND PAMELA WASCHER,**

**†  PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,**

**V.**

**ABC INSURANCE COMPANY, CONTINENTAL WESTERN INSURANCE COMPANY, NATURAL SURFACES, LLC AND WILSON MUTUAL INSURANCE COMPANY,**

**DEFENDANTS-RESPONDENTS,**

**CARVED STONE CREATIONS,**

**DEFENDANT-RESPONDENT-CROSS-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | February 9, 2022 |
| Submitted on Briefs: | October 12, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *George R. Burnett* of *Law Firm of Conway, Olejniczak & Jerry, S.C.*, Green Bay. |

Respondent
ATTORNEYS:     On behalf of the defendant-respondent, Continental Western Insurance Company, the cause was submitted on the brief of *Thomas R. Schrimpf* of *Hinshaw & Culbertson LLP*, Milwaukee.

On behalf of the defendants-respondents, Natural Surfaces, LLC and Wilson Mutual Insurance Company, the cause was submitted on the brief of *Christopher R. Bandt* and *Sean A. Bukowski* of *Nash, Spindler, Grimstad & McCracken, LLP*, Manitowoc.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Erik J. Pless* and *Gabriel G. Siehr* of *Everson, Whitney, Everson & Brehm, S.C.*, Green Bay.

| COURT OF APPEALS | NOTICE |
|---|---|
| **DECISION** | |
| **DATED AND FILED** | This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports. |
| **February 9, 2022** | |
| Sheila T. Reiff | A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62. |
| Clerk of Court of Appeals | |

**Appeal No.  2020AP1961**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV1112

**IN COURT OF APPEALS**

THOMAS WASCHER AND PAMELA WASCHER,

   PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,

   V.

ABC INSURANCE COMPANY, CONTINENTAL WESTERN INSURANCE COMPANY, NATURAL SURFACES, LLC AND WILSON MUTUAL INSURANCE COMPANY,

   DEFENDANTS-RESPONDENTS,

CARVED STONE CREATIONS,

   DEFENDANT-RESPONDENT-CROSS-APPELLANT.

        APPEAL and CROSS-APPEAL from orders of the circuit court for Outagamie County:  CARRIE A. SCHNEIDER, Judge.  *Affirmed*.

        Before Stark, P.J., Hruz and Gill, JJ.

¶1 STARK, P.J. In this lawsuit, Thomas and Pamela Wascher have alleged negligence and breach of contract claims against Continental Western Insurance Company, Natural Surfaces, LLC, and Carved Stone Creations (collectively, "the Defendants"), stemming from the allegedly improper installation of stone cladding during the original construction of the Waschers' home.[1] The Waschers have also alleged additional negligence and breach of contract claims against Carved Stone based on repair work that Carved Stone later performed on the house.

¶2 The circuit court granted the Defendants' motions to dismiss the Waschers' negligence claims stemming from the original construction of the house, concluding those claims were barred by the economic loss doctrine. The court later granted summary judgment in favor of the Defendants on the Waschers' breach of contract claims stemming from the original construction of the home, concluding those claims were barred by the applicable statute of limitations and statute of repose—WIS. STAT. §§ 893.43 and 893.89 (2015-16),[2] respectively. However, the court denied Carved Stone's motion for summary judgment regarding the

---

[1] The Waschers have asserted a direct action claim against Continental Western as the insurer for Mathwig Homes & Remodeling, LLC, and Roger Mathwig Builders (collectively, "Mathwig Builders"). Mathwig Builders served as the general contractor for the original construction of the Waschers' home. We refer to Roger Mathwig, individually, by his first and last names.

[2] The statute of repose, WIS. STAT. § 893.89, was amended in 2017 to shorten the applicable exposure period from ten to seven years. *See* 2017 Wis. Act 235, § 27. On appeal, the parties agree that the pre-2017 version of the statute applies to this case. We therefore apply the pre-2017 version of the statute. Accordingly, all references to the Wisconsin Statutes are to the 2015-16 version.

Waschers' negligence and breach of contract claims arising out of Carved Stone's later repair work.

¶3     The Waschers now appeal the circuit court's orders dismissing their negligence and breach of contract claims stemming from the original construction of their home.  Carved Stone cross-appeals, arguing that the court erred by denying its summary judgment motion with respect to the claims arising out of its later repair work.[3]  We conclude the court did not err either by dismissing the negligence and breach of contract claims stemming from the original construction of the Waschers' home, or by denying summary judgment on the claims arising from Carved Stone's later repair work.  We therefore affirm.

## BACKGROUND

¶4     In 2005, the Waschers hired Mathwig Builders to act as the general contractor for the construction of their home in Greenville, Wisconsin.  The exterior walls and patio of the home were to be covered with stone cladding.  Mathwig Builders hired Natural Surfaces and Carved Stone as subcontractors for the project.  The parties agree that Carved Stone supplied the stone and provided guidance regarding its installation, while Natural Surfaces actually installed the stone on the Waschers' home.

¶5     On November 3, 2008, the Town of Greenville inspected the Waschers' residence and granted them permission to occupy the residence as of that date.  During her deposition, Pamela Wascher testified that the Waschers moved

---

[3] The Waschers petitioned for leave to appeal the nonfinal orders dismissing their negligence and breach of contract claims against Carved Stone stemming from the original construction of their home.  Carved Stone then petitioned for leave to appeal the nonfinal order denying its summary judgment motion with respect to the Waschers' claims arising from the later repairs.  We granted both petitions in an order dated January 6, 2021.

into the home in mid-November of 2008, although she did not know the exact date. Pamela further testified that "right away in 2009," the Waschers noticed "effervescence on the main patio, the main lanai, a lot of white substance coming through the stone." At that time, the effervescence was present only on the flat, horizontal stone on the patio. However, Pamela testified that in 2010 the effervescence was "all over the stone," on both horizontal and vertical surfaces.

¶6      In 2010, the Waschers hired Rob Ripley of Carved Stone to repair the stone cladding on their residence. Pamela testified that during those repairs, stone was removed from one of the home's vertical walls, revealing that flashing had not been installed behind the stone, "which means that all the water was going behind the stone and into the patio." The Waschers paid Carved Stone for the 2010 repair work. They approached Roger Mathwig about having him pay for that work, but he responded that the Waschers would need to sue him in order for him to pay.

¶7      The Waschers then retained an attorney, who sent a demand letter to Mathwig Builders' counsel on September 30, 2010, requesting reimbursement for repair costs in the amount of $22,328.83. Continental Western ultimately paid the Waschers approximately $14,000. In exchange for that amount, on February 24, 2011, the Waschers signed a "Property Damage Settlement and Release," which purported to release Mathwig Builders and Natural Surfaces from "any and all claims … arising out of the accident or incident that occurred on or about October 1st, 2009, at or near Greenville WI." Pamela testified that the release was "for the incident of this flashing situation."

¶8      Pamela further testified that in June or July of 2012, the Waschers "first observed" stone falling off of their home's vertical exterior walls. At some point in 2012, the Waschers again hired Carved Stone to perform repair work on the

stone cladding. Ripley has averred that Carved Stone's repair work "was completed, at the very latest, by September 18, 2012." In contrast, the Waschers allege that invoices from Carved Stone show that it continued performing repair work on their home until 2017.

¶9 From 2014 to 2018, the Waschers hired various other firms to inspect the stone on their home and explore repair options. In August 2018, pursuant to WIS. STAT. § 895.07(2), the Waschers sent letters to Continental Western (as Mathwig Builders' insurer), Carved Stone, and Natural Surfaces, providing notice of the Waschers' claims against those entities and granting them the opportunity to repair the alleged defects. The Waschers received no responses to their August 2018 letters.

¶10 The Waschers subsequently filed this lawsuit against the Defendants on November 20, 2018. The complaint alleged that the work performed by Mathwig Builders, Carved Stone, and Natural Surfaces was "deficient in regard to attaching and adhering the stone to the house" and that those entities "deviated from industry standards in construction for adhering the stone to the home" and "acted in a careless and negligent manner." The complaint also alleged that Carved Stone had been hired to perform repair work in 2012, but its work "to remedy the deficiencies in the stone cladding and horizontal deck stone topping systems on the house … created new problems with the house which included water damage." The complaint sought damages, as well as "an injunction ordering Defendants to perform remedial work" at the Waschers' home.

¶11 The Defendants moved to dismiss, arguing that the Waschers' complaint failed to state a claim upon which relief could be granted. Specifically, the Defendants argued that: (1) the Waschers' negligence claims were barred by

the economic loss doctrine; (2) the Waschers' breach of contract claims were barred by the statute of limitations for contract actions, WIS. STAT. § 893.43; and (3) WISCONSIN STAT. § 893.89—the statute of repose for actions alleging injuries resulting from improvements to real property—barred all of the Waschers' claims stemming from the original construction of their residence.

¶12    The circuit court granted the Defendants' motions to dismiss in part, concluding that the Waschers' negligence claims stemming from the original construction of their residence were barred by the economic loss doctrine. However, the court denied the Defendants' motions to dismiss the Waschers' breach of contract claims.  Although the court concluded that the "work complete[d] in 2008" was "clearly barred by the statute of limitations," it determined that the Waschers' complaint adequately alleged a defense to the statute of limitations—i.e., equitable estoppel.[4]   The court further concluded that the facts alleged in the complaint did not establish that the Waschers' claims arising from Carved Stone's later repair work were barred by the statute of limitations.

¶13    The Defendants then moved for summary judgment, arguing the undisputed facts established that: (1) the statute of repose barred all of the Waschers' claims stemming from the original construction of their residence; (2) the statute of limitations barred the Waschers' breach of contract claims stemming from the original construction, including their claim for injunctive relief; and (3) the doctrine of equitable estoppel did not apply.  Carved Stone also argued that the Waschers' breach of contract and negligence claims stemming from Carved Stone's

---

[4] The circuit court did not address the statute of repose, but it noted that the Waschers' estoppel argument "would also apply to the statute of repose."

later repair work were barred, respectively, by the statute of limitations and the economic loss doctrine.

¶14 The circuit court granted the Defendants summary judgment on the Waschers' breach of contract claims stemming from the original construction of their home, concluding that those claims were barred by the statutes of limitations and repose, and that the doctrine of equitable estoppel did not apply. The court denied summary judgment, however, with respect to the claims arising from Carved Stone's later repair work. The court concluded the economic loss doctrine did not apply to those claims because the Waschers contended that Carved Stone "provided primarily labor and therefore the contracts for the repair work were contracts for services," and Carved Stone "[did] not dispute that the contracts were services contracts." The court also rejected Carved Stone's argument that the statute of limitations barred the Waschers' breach of contract claim stemming from the later repair work, concluding that any breach of contract claim for work performed after November 20, 2012, was timely.

¶15 The Waschers now appeal, arguing that the circuit court erred by dismissing their negligence and breach of contract claims stemming from the original construction of their residence. Carved Stone cross-appeals, arguing that the court erred by denying its motion for summary judgment regarding the Waschers' claims arising from Carved Stone's later repair work.

## DISCUSSION

### I. The Waschers' Appeal

¶16    As noted above, the Waschers argue that the circuit court erred by granting the Defendants' motion to dismiss their negligence claims stemming from the original construction of their home based on the economic loss doctrine, and by granting the Defendants summary judgment on their breach of contract claims stemming from the original construction based on the statutes of limitations and repose. We affirm the court's rulings, but on slightly different grounds.

¶17    Specifically, we conclude the undisputed facts establish that: (1) the statute of repose bars the Waschers' negligence claims stemming from the original construction of their home; (2) the statute of limitations bars the Waschers' breach of contract claims stemming from the original construction; (3) neither equitable estoppel, the repair doctrine, nor the continuous treatment rule extends the statute of limitations or statute of repose; (4) the statutory notice provided by the Waschers pursuant to WIS. STAT. § 895.07(2) did not extend the statute of limitations or statute of repose; (5) the statutes of limitations and repose bar the Waschers' claim for injunctive relief; and (6) the fifteen-year statute of repose for product liability claims in WIS. STAT. § 895.047(5) does not apply to the Waschers' claims against Natural Surfaces. Because we conclude the undisputed facts establish that the statutes of limitations and repose bar all of the Waschers' claims stemming from the original construction of their residence, we need not address the Waschers' argument that the circuit court erred by concluding that their negligence claims stemming from the original construction were barred by the economic loss doctrine. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

8

### A. Standard of Review

¶18 We review a grant of summary judgment independently, using the same methodology as the circuit court. **Hardy v. Hoefferle**, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). In this case, our review of the circuit court's summary judgment decision requires us to interpret and apply various statutes. The interpretation of a statute and its application to a set of undisputed facts present questions of law for our independent review. **McNeil v. Hansen**, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

### B. Statute of Repose

¶19 WISCONSIN STAT. § 893.89, the statute of repose for actions for injuries resulting from improvements to real property, provides that subject to certain exceptions,

> no cause of action may accrue and no action may be commenced … against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

Sec. 893.89(2). The statute defines the term "exposure period" as "the 10 years immediately following the date of substantial completion of the improvement to real property." Sec. 893.89(1). "Generally speaking, WIS. STAT. § 893.89 provides that

persons involved in improvements to real property may not be sued more than ten years after substantial completion of a project." ***Kalahari Dev., LLC v. Iconica, Inc.***, 2012 WI App 34, ¶6, 340 Wis. 2d 454, 811 N.W.2d 825.

¶20 In this case, there is no dispute that the Waschers' residence constitutes an improvement to real property. The parties disagree, however, as to when the construction of the Waschers' residence was substantially completed, such that the ten-year exposure period began to run. The circuit court concluded the undisputed facts established that the residence was substantially completed on November 3, 2008—the date the Town of Greenville granted the Waschers permission to occupy the residence. We agree with that conclusion.

¶21 Our decision in ***Holy Family Catholic Congregation v. Stubenrauch Associates, Inc.***, 136 Wis. 2d 515, 402 N.W.2d 382 (Ct. App. 1987), is instructive. In that case, we were required to determine when a church building had been substantially completed for purposes of WIS. STAT. § 893.89. ***Holy Fam.***, 136 Wis. 2d at 517. We concluded the undefined term "substantial completion" in § 893.89 was ambiguous because "[t]he vagueness of the word 'substantial,' without further definition, justifiably invites the parties to disagree as to the time the church was largely, but not wholly, completed." ***Holy Fam.***, 136 Wis. 2d at 521. After considering the statute's legislative history, we determined the legislature intended "that the [exposure] period should begin to run when planners, designers, and contractors lose a significant amount of control over the improvement." ***Id.*** at 523. We then held that "[a] convenient and fair measure of the time when control over the improvement shifts from the builders to the owner is the date 'when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended.'" ***Id.*** (quoting ***Van Den Hul v. Baltic Farmers Elevator Co.***, 716 F.2d 504, 508 (8th Cir. 1983)).

¶22 Here, the undisputed facts establish that the Town of Greenville granted the Waschers permission to occupy their residence on November 3, 2008.[5] The Waschers do not dispute that, if they had so desired, they could have moved into the residence on that date. Thus, as of November 3, 2008, the Waschers could "occupy or use [their residence] for the use it was intended." *See id.* (quoting *Van Den Hul*, 716 F.2d at 508). As such, the circuit court properly determined that for purposes of WIS. STAT. § 893.89, the Waschers' residence was substantially completed on November 3, 2008. The Waschers filed their complaint in this lawsuit on November 20, 2018—more than ten years after the date of substantial completion. Consequently, the statute of repose bars the Waschers' negligence claims stemming from the original construction of their residence.[6]

¶23 The Waschers suggest that *Holy Family* actually supports their position because the *Holy Family* court rejected the defendant architect's contention that the church building was substantially completed on the date the architect issued a certificate of substantial completion to the congregation. *See Holy Fam.*, 136 Wis. 2d at 521-22. After adopting the definition of "substantial completion" set forth above, the court determined that the church building was substantially completed on the date "when the congregation first occupied the building for its

---

[5] The Waschers assert no "competent evidence" shows that their residence was substantially completed on November 3, 2008. They refer to the Town of Greenville's inspection report from that date as "an unexplained record … without a witness to explain it." As Continental Western notes, however, the Waschers have not developed any argument—either in the circuit court or on appeal—challenging the inspection report's authenticity or admissibility. We therefore reject the Waschers' undeveloped assertion that the inspection report is not "competent evidence" as to the date their residence was substantially completed. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).

[6] The statute of repose would also bar the Waschers' breach of contract claims stemming from the original construction of their residence. However, as we explain below, those claims are instead barred by WIS. STAT. § 893.43—the six-year statute of limitations applicable to contract claims.

intended purpose"—i.e., the date it first met for services at the building. *Id.* at 525. Based on that determination, the Waschers argue that their residence was not substantially completed until the date they actually moved in, which Pamela Wascher testified was in mid-November of 2008. Because the Waschers' complaint was filed on November 20, 2018, they contend there is at least a genuine issue of material fact as to whether they filed suit within the ten-year exposure period.

¶24 We do not find this argument persuasive. The *Holy Family* court "reject[ed] the notion that the architect may unilaterally determine the [exposure] period's commencement," reasoning that "it is the court, not the architect, who determines the date of substantial completion." *Id.* at 524. This case, however, does not involve a certificate of substantial completion issued by one of the Defendants; it involves an occupancy permit issued by the Town of Greenville—a neutral third party. That circumstance was not present in *Holy Family*.

¶25 Regardless, *Holy Family* does not stand for the proposition that, in all cases, substantial completion occurs on the date when the owner actually occupies an improvement to real property for the first time. To the contrary, the *Holy Family* court expressly held that substantial completion occurs "when construction is sufficiently completed so that the owner or his representative *can occupy or use* the improvement for the use it was intended." *Id.* at 523 (emphasis added) (quoting *Van Den Hul*, 716 F.2d at 508). In *Holy Family*, there was evidence of the date the congregation first used the church building for services, but the court did not cite any evidence as to the date a certificate of occupancy was granted by the governing municipality. Under those circumstances, the court concluded substantial completion of the building occurred on the date when the congregation first used the building.

¶26    Here, in contrast, undisputed evidence shows that the Waschers could have used their home for its intended purpose beginning on November 3, 2008, the date the Town of Greenville granted them permission to occupy the residence. The *Holy Family* court emphasized that the deciding factor in the substantial completion analysis is the ability to occupy or use an improvement to real property for its intended purpose, rather than actual occupation or use, when it stated: "[A] factor that considers the date the owner can occupy a building prevents the owner from affecting the [exposure] period's commencement by arbitrarily delaying occupancy." *Id.* at 524.

¶27    The Waschers also assert that their residence was not substantially complete on November 3, 2008, because the Town of Greenville's inspection report from that date noted that access to the attic was not approved and that some handrails appeared to be temporary. This argument misses the mark because the statute of repose does not state that the exposure period begins to run on the date when an improvement to real property is complete; instead, the statute merely requires "substantial completion." WIS. STAT. § 893.89(1). Under the definition of "substantial completion" set forth in *Holy Family*, it is not dispositive that certain items at the Waschers' residence remained incomplete as of November 3, 2008, as long as the residence was sufficiently completed so that the Waschers could occupy or use it for its intended purpose. As we have already explained, the Waschers were granted permission to occupy the residence on November 3, 2008, and they could have occupied it beginning on that date.

¶28    Finally, the Waschers assert that the construction of their residence could not have been substantially complete on November 3, 2008, because the Defendants failed to install flashing behind the stone cladding, as required by the design drawings. The Waschers contend the "[d]eliberate omission of a key

13

component of the structure renders it incomplete, whether the owners move in or not." The plaintiff congregation raised a similar argument in **Holy Family**, contending that "a church building constructed with a leaky roof cannot be considered substantially completed." **Holy Fam.**, 136 Wis. 2d at 525. We rejected that argument, explaining that it improperly "urge[d] us to focus on the quality of construction, something not contemplated by the statute." **Id.** Here, too, the Waschers' claim that the omission of flashing prevented their residence from being substantially complete improperly invites us to focus on the quality of the Defendants' work, rather than on whether the residence was sufficiently completed for the Waschers to use or occupy it.

¶29 Because the Waschers' residence was substantially complete on November 3, 2008, the Waschers were required to bring any negligence claims stemming from the original construction by November 3, 2018. They failed to do so, as their complaint was not filed until November 20, 2018. Accordingly, the statute of repose bars the Waschers' negligence claims stemming from the original construction of their residence, and the circuit court properly dismissed those claims.

*C. Statute of Limitations*

¶30     The Waschers next argue that the circuit court erred by determining that WIS. STAT. § 893.43—the statute of limitations for contract claims—barred their breach of contract claims arising from the original construction of their residence. Section 893.43(1) provides, in relevant part: "[A]n action upon any contract, obligation, or liability, express or implied … shall be commenced within 6 years after the cause of action accrues or be barred."

¶31     The Waschers initially contend that the statute of repose (WIS. STAT. § 893.89), rather than the statute of limitations (WIS. STAT. § 893.43), applies to their breach of contract claims. As noted above, the statute of repose generally provides that an action for injury resulting from an improvement to real property must be commenced within the ten-year exposure period immediately following the substantial completion of the improvement to real property. Sec. 893.89(1)-(2). However, subsec. (3)(a) of the statute expressly states:

> Except as provided in pars. (b) and (c), if a person sustains damages as the result of a deficiency or defect in an improvement to real property, and the statute of limitations applicable to the damages bars commencement of the cause of action before the end of the exposure period, the statute of limitations applicable to the damages applies.

Sec. 893.89(3)(a). We have previously held that "when an action is one for contract damages, … § 893.89(3)(a) directs that its ten-year time limit be compared with the time limit applicable to contract actions to see which is shorter, and that the shorter limit applies." *Kalahari*, 340 Wis. 2d 454, ¶11. Accordingly, the six-year limitation period in § 893.43(1) applies to the Waschers' breach of contract claims, rather than the ten-year statute of repose.

¶32     The Waschers cite WIS. STAT. § 893.89(3)(b), which provides:

> If, as the result of a deficiency or defect in an improvement to real property, a person sustains damages during the period beginning on the first day of the 8th year and ending on the last day of the 10th year after the substantial completion of the improvement to real property, the time for commencing the action for the damages is extended for 3 years after the date on which the damages occurred.

The Waschers assert that subsec. (3)(b) "extends the time to commence suit if property damage occurs between year 8 and year 10 after substantial completion," giving a plaintiff three additional years after the damage occurred in which to file suit. The Waschers contend that Pamela Wascher's deposition testimony and affidavit "make plain that the damages are ongoing" and that the Waschers' property "suffered damage due to defendants' mistakes between November 3, 2015 and November 3, 2018 and even beyond." Accordingly, the Waschers assert that § 893.89(3)(b) applies and, as a result, the statute of repose supplanted the statute of limitations and "remain[ed] open until November 2021."

¶33 As the Waschers acknowledge, however, we rejected an identical argument based on WIS. STAT. § 893.89(3)(b) in *Kalahari*. We expressly held in *Kalahari* that the ten-year exposure period in § 893.89 "is not intended to override shorter applicable statutes of limitations, such as the shorter six-year statute of limitations on contract actions." *Kalahari*, 340 Wis. 2d 454, ¶19. We further held that when an action is time-barred by the six-year statute of limitations, "it makes no sense to say that the subsection (3)(b) exception, extending the ten-year time limit, applies because the damage occurred after year 7." *Kalahari*, 340 Wis. 2d 454, ¶19. Although the Waschers suggest that *Kalahari* was wrongly decided, we are bound by our own published precedent. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997). We therefore reject the Waschers' argument that the

statute of repose, rather than the statute of limitations, applies to their breach of contract claims and permitted them to bring those claims until November 2021.

¶34    We further conclude that the circuit court properly determined the statute of limitations barred the Waschers' breach of contract claims stemming from the original construction of their residence. As noted above, the statute of limitations provides that an action upon any contract "shall be commenced within 6 years after the cause of action accrues or be barred." WIS. STAT. § 893.43(1). Nearly thirty years ago, our supreme court held that "under sec. 893.43, a contract cause of action accrues at the moment the contract is breached, regardless of whether the injured party knew or should have known that the breach occurred." *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 174 Wis. 2d 604, 607, 497 N.W.2d 115 (1993). The *CLL* court noted that its holding in that regard was supported by a "90-year line of precedent." *Id.* at 609.

¶35    Here, the Waschers have alleged that the Defendants breached their contracts with the Waschers by failing to properly install the stone cladding on the Waschers' home during its original construction. The Defendants assert—and the Waschers do not dispute—that any breach of contract relating to the original construction must have occurred by November 3, 2008—the date the Waschers were granted permission to occupy the home. The Waschers' breach of contract claims therefore accrued, at the latest, on November 3, 2008. As such, the statute of limitations required them to file suit by November 3, 2014. Because the Waschers did not file their complaint until November 20, 2018, the statute of limitations bars their breach of contract claims stemming from the original construction of their home.

¶36  The Waschers assert that a breach of contract claim cannot accrue until damage has occurred.  They then contend that the Defendants have failed to establish when the relevant damage in this case took place.  Consequently, the Waschers argue the Defendants have failed to show, as a matter of law, that the statute of limitations bars the Waschers' breach of contract claims stemming from the original construction of their residence.

¶37  We reject this argument because it disregards our long-standing precedent holding that, for purposes of the statute of limitations, a breach of contract claim accrues at the time of the breach.  *See CLL*, 174 Wis. 2d at 607; *see also Cook*, 208 Wis. 2d at 189 (stating that the Wisconsin Supreme Court is "the only state court with the power to overrule, modify or withdraw language from a previous supreme court case").  In any event, Pamela Wascher testified during her deposition that "right away in 2009," the Waschers noticed "effervescence on the main patio, the main lanai, a lot of white substance coming through the stone."  Pamela also testified that in 2010 the effervescence was "all over the stone," on both horizontal and vertical surfaces.  This testimony confirms that the Waschers suffered damage as a result of the Defendants' alleged contractual breaches in 2009 and 2010.  Even if the Waschers' breach of contract claims accrued as late as 2010, those claims would still be barred by the six-year limitation period in WIS. STAT. § 893.43(1), as the Waschers did not file their complaint until November 20, 2018.

   D. *Equitable Estoppel, the Repair Doctrine, and the Continuous Treatment Rule*

¶38  The Waschers next argue that even if their breach of contract and negligence claims stemming from the original construction of their residence would otherwise be barred by the statutes of limitations and repose, "[e]stoppel, the repair doctrine, and the continuous treatment rule extend the statutes of limitations and

repose." The Waschers also note that the statute of repose "never applies to concealed deficiencies or defects." *See* WIS. STAT. § 893.89(4)(a).

¶39 The Waschers rely on *Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, 377 Wis. 2d 596, 901 N.W.2d 797, in support of their argument regarding WIS. STAT. § 893.89(4)(a). The claims in *Wosinski* arose after a large concrete panel fell from a parking garage, killing one individual and injuring three others. *Wosinski*, 377 Wis. 2d 596, ¶7. The plaintiffs sued various parties that had been involved in the parking garage's construction. *Id.*, ¶16. On appeal, we considered whether the plaintiffs' claims were barred by the ten-year statute of repose. *Id.*, ¶¶33-34.

¶40 In answering that question, we noted that the statute of repose does not apply "in cases where '[a] person … commits fraud, concealment or misrepresentation related to a deficiency or defect in the improvement to real property.'" *Id.*, ¶35 (quoting WIS. STAT. § 893.89(4)(a)). We then concluded there was sufficient evidence to support the jury's findings that one defendant, Advance Cast Stone (ACS), had concealed and misrepresented a defect in the parking garage because: (1) ACS had deviated from the planned method of installing the concrete panel, but the "As-Built Drawings" filed with Milwaukee County did not reflect that change; (2) ACS's foreman for the project testified that he discussed the changes in the installation method with ACS's owner, and "they agreed not to put the changes in writing"; and (3) the testimony of another ACS employee gave rise to a reasonable inference that the foreman "misled one of his own employees with regard to the installation method being utilized." *Id.*, ¶¶36-38.

¶41 *Wosinski* does not support the Waschers' claim that the exception to the statute of repose in WIS. STAT. § 893.89(4)(a) applies in this case. The Waschers

19

argue that exception applies because the deficiencies in the Defendants' work—specifically, the omission of flashing and the use of an inappropriate mortar to affix the stones—were not readily apparent and were therefore concealed from the Waschers. We disagree. In *Wosinski*, there was evidence that ACS took affirmative actions to conceal the method it had used to install the concrete panels and to mislead Milwaukee County regarding the installation method, evidencing ACS's intent to conceal and misrepresent the defective installation method.

¶42 Conversely, in this case, the Waschers point to no evidence that the Defendants actively concealed from them the type of mortar used or the fact that flashing had not been installed. Although the placement of the stone cladding on the house may have hidden the mortar from view and obscured the fact that flashing had not been installed, there is no evidence to suggest that the Defendants placed the stone on the home with the intent to conceal any alleged defects from the Waschers. Absent such evidence of intent, the fact that the Defendants' work was allegedly defective is not sufficient, in and of itself, to show that they engaged in fraud, concealment, or misrepresentation, as required by WIS. STAT. § 893.89(4)(a).[7]

¶43 Turning to the Waschers' arguments regarding equitable estoppel, in *State ex rel. Susedik v. Knutson*, 52 Wis. 2d 593, 596-97, 191 N.W.2d 23 (1971), our supreme court held that a defendant should be estopped from asserting the statute of limitations as a defense where: (1) the defendant was guilty of fraudulent or inequitable conduct; (2) the aggrieved party relied on the defendant's acts or representations and, as a result, failed to commence an action within the statutory

---

[7] In their reply brief, the Waschers assert that "neither concealment nor misrepresentation require intentional deception." They do not, however, cite any legal authority in support of that proposition, and we do not find it persuasive.

limitation period; (3) the defendant's acts, promises, or representations occurred before the expiration of the limitation period; and (4) after the inducement for delay ceased to operate, the aggrieved party did not unreasonably delay in filing suit. We agree with the circuit court that the undisputed facts show the Waschers cannot establish the elements required for the application of equitable estoppel in this case.

¶44 With respect to Continental Western, the Waschers allege that Roger Mathwig directed Carved Stone to omit the flashing behind the stone cladding "after assuring Pamela Wascher no water could possibly infiltrate the stone." Continental Western denies that Mathwig knew the flashing had been omitted or that he represented that omitting the flashing would not cause problems. Nevertheless, Continental Western notes it is undisputed that the Waschers knew of the flashing's omission no later than February 24, 2011, as Pamela Wascher admitted during her deposition testimony that the Waschers had "signed a release for the incident of this flashing situation" on that date. Pamela also testified that before the release was signed, the Waschers approached Roger Mathwig about having him pay for repair work performed in 2010, and he told the Waschers they would need to file suit against him in order for him to pay. The Waschers nevertheless waited until November 20, 2018, to file this lawsuit. We agree with the circuit court that the Waschers have not pointed to any evidence showing that they failed to file suit within the time periods permitted in the statutes of limitations and repose as a result of their reliance on any acts or representations by Roger Mathwig.

¶45 With respect to Natural Surfaces and Carved Stone, the Waschers allege that the thin-set mortar that Carved Stone recommended and that Natural Surfaces used to adhere the stone cladding "did not even closely meet the weight restrictions" required by the applicable building code. The Waschers further assert

that Natural Surfaces and Carved Stone were unqualified to make the "critical engineering judgments" needed to determine whether the mortar would be adequate to hold the vertical stones in place.

¶46    These allegations, if true, might establish that Carved Stone and Natural Surfaces were negligent in the performance of their duties and breached their contracts with the Waschers.  However, these allegations do not establish that either Natural Surfaces or Carved Stone engaged in any fraudulent or inequitable conduct that the Waschers relied upon in not commencing suit within the statutory time limits.  *See Susedik*, 52 Wis. 2d at 596-97.  Again, like the circuit court, we conclude the Waschers "do not point to any action by Defendants that induced them not to sue."

¶47    The Waschers next argue that "[t]he repair doctrine and the continuous treatment rule extend[ed] the statute of limitations" on their breach of contract claims stemming from the original construction of their home.  They contend the repair doctrine is a legal principle that "tolls the statute of limitations while the parties jointly repair and remedy construction defects."  In support of this argument, however, the Waschers cite only cases from other jurisdictions.  They concede that no Wisconsin court has addressed or adopted the repair doctrine.  We decline to do so as a matter of first impression in this case.

¶48    The Waschers also assert that under the continuous treatment rule, "patients who physicians treat for ongoing problems risk no statute of limitation

22

until treatment ends."[8]  The Waschers assert that one New York court has "applied the continuous treatment rule to toll the running of the breach of contract statute of limitations in a construction case."  Again, however, the Waschers cite no Wisconsin authority supporting the proposition that the continuous treatment rule can apply to a breach of contract claim arising from allegedly deficient construction. We decline to so hold in this case as a matter of first impression.

### E.  Statutory Notice Under WIS. STAT. § 895.07(2)

¶49    WISCONSIN STAT. § 895.07(2) provides that before commencing an action against a contractor or supplier regarding a construction defect, a claimant must deliver a written notice to the contractor or supplier containing a description of the claim and must give the contractor or supplier the opportunity to repair or remedy the alleged defect.  Subsection (9) of the statute further states:

> If, during the pendency of the notice, inspection, offer, acceptance, or repair process, an applicable limitation period would otherwise expire, the limitation period is tolled pending completion of the notice of claim process described

---

[8] In *Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis. 2d 536, 551-53, 327 N.W.2d 55 (1982), our supreme court expressly declined to adopt the "continuous treatment rule"—i.e., a rule "that the statute of limitations for medical malpractice actions commences to run from the last day the plaintiff receives treatment from the defendant health care provider for the same or related condition as that which is the subject matter of the complaint."  The court instead adopted a rule that

> where there is a continuum of negligent medical care related to a single condition occasioned by negligence, there is but one cause of action; and if any act of negligence within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split his cause of action but may bring suit for the consequences of the entire course of conduct.

*Id.* at 556.  Our supreme court has since referred to this rule as the "continuous negligent treatment doctrine."  *See Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 21 n.11, 402 N.W.2d 711 (1987) (emphasis omitted).  Although the Waschers refer to the continuous treatment rule, we construe their argument as asserting that the continuous negligent treatment doctrine should apply in this case.

in this section. This subsection shall not be construed to revive a limitation period that has expired before the date on which a claimant's written notice of claim is served or extend any applicable statute of repose.

Sec. 895.07(9).

¶50 It is undisputed that the Waschers provided the notice required by WIS. STAT. § 895.07(2) to the Defendants in August 2018. The Waschers contend that pursuant to § 895.07(9), that notice tolled both the statute of limitations and the statute of repose. Subsection (9) expressly states, however, that it shall not be construed to revive a limitation period that expired before the date on which the claimant's notice of claim was served. Sec. 895.07(9). As explained above, the statute of limitations applicable to the Waschers' breach of contract claims arising from the original construction of their residence expired in November 2014—long before the Waschers gave the written notice required by § 895.07(2) in August 2018. Furthermore, although the statute of repose had not yet expired in August 2018, § 895.07(9) "shall not be construed to … extend any applicable statute of repose." We therefore reject the Waschers' claim that the notice they provided under § 895.07(2) extended either the statute of limitations or the statute of repose.

### F. Claim for Injunctive Relief

¶51    The Waschers next argue that the statutes of limitations and repose do not apply to their claim for injunctive relief because both statutes apply only to actions seeking "damages." We disagree. The statute of limitations expressly states that it applies to "an action upon any contract, obligation, or liability, express or implied." WIS. STAT. § 893.43(1). Nothing in the plain language of the statute limits its application to actions seeking damages, as opposed to injunctive relief. As such, the statute of limitations plainly applies to the Waschers' request for an injunction.

¶52    In contrast, the statute of repose states that it applies to actions "to recover damages." WIS. STAT. § 893.89(2). Nevertheless, we conclude that under the circumstances of this case, the statute of repose does apply to the Waschers' claim for injunctive relief.

¶53    Our supreme court has explained that an injunction

> is a preventive order looking to the future conduct of the parties. To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of will and injure the plaintiff. To invoke the remedy of injunction the plaintiff must moreover establish that the injury is irreparable, *i.e.* not adequately compensable in damages.

***Pure Milk Prods. Co-op. v. National Farmers Org.***, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979) (citations omitted). "[I]f an equitable action is providing compensation for past wrongs—if it is 'remedial in nature'—it cannot be lumped indiscriminately with a typical injunction, because it is serving a different purpose from a typical injunction." ***Johnson Controls, Inc. v. Employers Ins. of Wausau***, 2003 WI 108, ¶43, 264 Wis. 2d 60, 665 N.W.2d 257.

¶54     The Waschers' complaint sought an injunction "ordering Defendants to perform remedial work" at the Waschers' home. That request was not aimed at preventing some future conduct by the Defendants that would injure the Waschers or violate their rights. Rather, the Waschers' request for injunctive relief was, at its core, remedial in nature—it sought to remedy allegedly deficient work that the Defendants had already performed. We agree with the Defendants that under these circumstances, the Waschers' claim for injunctive relief "cannot be lumped indiscriminately with a typical injunction, because it is serving a different purpose from a typical injunction." *See id.* While the Waschers assert that the injunction "addresses future danger" because the stones falling from their residence present an ongoing safety hazard, that circumstance does not change the fact that the relief the Waschers seek is remedial in nature. Like the circuit court, we therefore reject the Waschers' assertion that the statute of repose does not apply to their claim for injunctive relief.

## G.  Statute of Repose for Product Liability Claims

¶55     Finally, the Waschers assert that the thin-set mortar that Natural Surfaces "selected and sold" was "inappropriate" for use in adhering the stone cladding to the Waschers' residence because the mortar was "grossly under strength" and therefore "accommodated only a small fraction of the weight of the stones." The Waschers also assert that Natural Surfaces "sold the [mortar] to Mathwig and installed it when building codes required a mechanical means of attachment." The Waschers therefore contend that the mortar was "a defective component" that was "unfit for the setting in which Natural Surfaces employed it." As a result, the Waschers argue that Natural Surfaces—as the seller of the mortar— is "strictly liable for the property damage that has ensued." *See* WIS. STAT. § 895.047(1). The Waschers therefore contend that the fifteen-year statute of repose

for product liability claims applies to their claims against Natural Surfaces. *See* § 895.047(5).

¶56 Natural Surfaces could be strictly liable as the seller of the mortar if, among other things, the manufacturer of the mortar would also be strictly liable. WIS. STAT. § 895.047(2)(a). In order to hold a manufacturer strictly liable in an action for damages caused by a product, the plaintiff must prove "[t]hat the product is defective because it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings." Sec. 895.047(1)(a). The Waschers do not allege that the mortar Natural Surfaces used on their home contained a manufacturing defect, was defective in design, or was defective due to inadequate instructions or warnings. Instead, the Waschers simply assert that the mortar was inappropriate for the setting in which it was used. Under these circumstances, the Waschers have no claim under § 895.047, and the fifteen-year statute of repose for product liability claims is inapplicable.

¶57 In their reply brief, the Waschers assert that Natural Surfaces not only sold the mortar mix, but also manufactured the final mortar used to hold the stone in place by combining the mortar mix with water. They then assert that the final product—i.e., the mortar created by combining the mortar mix with water—was defective because it was too weak to hold the stone. We reject this argument because the Waschers cite no evidence that the mortar was defective because it was improperly "manufactured" by Natural Surfaces. Instead, the Waschers have consistently alleged that Natural Surfaces was negligent because it selected and applied a mortar that was not appropriate for the context in which it was used. As explained above, those allegations do not give rise to a product liability claim because they do not allege that Natural Surfaces manufactured or sold a defective product.

27

### H. Conclusion

¶58    In summary, we conclude that the applicable statute of repose, WIS. STAT. § 893.89, bars the Waschers' negligence claims stemming from the original construction of their residence.  We further conclude that the applicable statute of limitations, WIS. STAT. § 893.43, bars the Waschers' breach of contract claims arising from the original construction.  We reject each of the Waschers' arguments to the contrary.  Accordingly, we affirm the circuit court's orders dismissing the Waschers' negligence and breach of contract claims stemming from the original construction of their home.

## II.  Carved Stone's Cross-Appeal

¶59    In its cross-appeal, Carved Stone argues that the circuit court erred by denying its summary judgment motion regarding the Waschers' negligence and breach of contract claims arising from repair work that Carved Stone performed on the Waschers' property subsequent to the original construction.  Carved Stone asserts the undisputed facts show that the Waschers' negligence claim arising from the later repair work was barred by the economic loss doctrine.  Carved Stone further argues that both the negligence and breach of contract claims stemming from the later repair work were barred by the applicable statutes of limitations.  We reject each of these arguments.

### A. Economic Loss Doctrine

¶60    "The economic loss doctrine is a judicially created doctrine under which a purchaser of a product cannot recover from a manufacturer on a tort theory for damages that are solely economic."  ***Linden v. Cascade Stone Co.***, 2005 WI 113, ¶6, 283 Wis. 2d 606, 699 N.W.2d 189 (citation omitted).  The doctrine is not

applicable, however, to claims for the negligent provision of services. ***Insurance Co. of N. Am. v. Cease Elec. Inc.***, 2004 WI 139, ¶52, 276 Wis. 2d 361, 688 N.W.2d 462.

¶61 In its primary cross-appeal brief, Carved Stone acknowledges the Waschers' argument that the economic loss doctrine does not apply to the Waschers' negligence claim stemming from Carved Stone's later repair work because that work was performed pursuant to a contract for services. Carved Stone asserts, however, that the economic loss doctrine does apply because Carved Stone "provided a product for the initial construction and the repair work done on the lanai."

¶62 We reject this argument because it ignores the basis for the circuit court's ruling that the economic loss doctrine did not apply to the Waschers' claims stemming from Carved Stone's later repair work. In its summary judgment decision, the court noted the Waschers had argued that Carved Stone "provided primarily labor" in relation to the repair work and "therefore the contracts for the repair work were contracts for services." The court then observed that Carved Stone "[did] not dispute that the contracts [for the later repair work] were services contracts." Accordingly, the court concluded that the Waschers could pursue tort claims arising out of Carved Stone's repair work "as long as those claims [were] not barred by the statute of limitations."

¶63 On appeal, Carved Stone does not address the circuit court's determination that Carved Stone did not dispute that the repair work was performed pursuant to a contract for services. Nor does Carved Stone point to any portion of the appellate record showing that it disputed that point during the circuit court proceedings. An appellant's failure to address the grounds on which the circuit

court ruled constitutes a concession of the ruling's validity. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994). Moreover, arguments raised for the first time on appeal are generally deemed forfeited. *Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810. We therefore reject Carved Stone's assertion that the economic loss doctrine bars the Waschers' negligence claim stemming from Carved Stone's later repair work.

### B. Statutes of Limitations

¶64 Carved Stone next argues that the Waschers' negligence and breach of contract claims arising from the later repair work are barred by the applicable statutes of limitations. As discussed above, WIS. STAT. § 893.43(1) provides that an action upon any contract must be commenced within six years after the cause of action accrues. WISCONSIN STAT. § 893.52(1) similarly provides that "an action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred."

¶65 Carved Stone alleges the undisputed facts show that it last performed repair work on the Waschers' residence on September 18, 2012. Carved Stone therefore asserts that the statutes of limitations for both the Waschers' negligence and breach of contract claims stemming from the repair work expired on September 18, 2018. Because the Waschers did not file their complaint until November 20, 2018, Carved Stone contends that their claims stemming from the repair work are untimely.

¶66 We agree with the Waschers that a genuine issue of material fact exists as to when Carved Stone last performed repair work at the Waschers' residence. Although Rob Ripley averred that Carved Stone last performed repair work at the Waschers' residence on September 18, 2012, the Waschers produced invoices for

work that Carved Stone performed at the home as late as September 2017. In addition, Pamela Wascher testified during her deposition that after 2012, Carved Stone's repair work at the property was "ongoing." To the extent that any repair work performed after November 20, 2012, caused damage to the Waschers' property, the Waschers' claims arising from that work would not be barred by either WIS. STAT. § 893.43(1) or WIS. STAT. § 893.52(1).[9]

¶67 Moreover, the Waschers' negligence claim stemming from Carved Stone's later repair work is subject to the discovery rule, which provides that tort claims "accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *See **Hansen v. A.H. Robins, Inc.***, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983). Based on Pamela Wascher's deposition testimony, Carved Stone asserts that the Waschers first became aware of problems arising from the 2012 repair work in June or July of 2012. The Waschers, however, contend that they first became aware of the damage caused by the 2012 repair work upon receipt of a forensic engineering report in September 2014. On this record, we conclude there is a genuine issue of material fact as to when the Waschers discovered the damage allegedly caused by Carved Stone's repair work.

¶68 Accordingly, we affirm the circuit court's order denying Carved Stone's summary judgment motion on the Waschers' claims stemming from the repair work that Carved Stone performed on their residence subsequent to the

---

[9] Carved Stone asserts that any repair work performed after 2012 is irrelevant because the Waschers' complaint only alleged that Carved Stone performed repair work on their residence in 2012. The circuit court rejected this argument, reasoning that it "ignore[d] the deposition testimony [of Pamela Wascher] that Carved Stone never remedied the problem despite working on repairs through 2017." The court also noted that Carved Stone had not challenged the sufficiency of the Waschers' complaint. We agree with the court's analysis in this regard.

original construction. The court properly determined that WIS. STAT. § 893.43(1) did not bar any breach of contract claim stemming from repair work that Carved Stone performed after November 20, 2012. The court also properly concluded that neither WIS. STAT. § 893.52(1) nor the economic loss doctrine barred the Waschers' negligence claim arising from Carved Stone's repair work.

*By the Court.*—Orders affirmed.